[Sac. No. 1986. In Bank.—November 20, 1912.]

## THE SAN JOAQUIN AND KINGS RIVER CANAL AND IRRIGATION COMPANY, INCORPORATED (a Corporation), Appellant, v. JAMES J. STEVINSON (a Corporation), et al., Respondents.

EMINENT DOMAIN—WATER—PUBLIC USE.—The use of water for sale, rental, and distribution to the public generally is a public use.

ID.—POWER TO EXERCISE MUST BE GRANTED.—No person or corporation can exercise the power of eminent domain except by a grant from the state.

ID.—WATER MAY BE CONDEMNED FOR PUBLIC USE.—Section 1238 of the Code of Civil Procedure, authorizes the exercise of the right of eminent domain for the condemnation of water to be devoted to such a public use.

ID.—PLEADING—LOCATION OF CANALS—PLACE OF USE OF WATER SOUGHT TO BE CONDEMNED—TERRITORY TO BE SERVED.—A complaint to condemn water for public use, which alleges that the plaintiff owns two large canals, one seventy-two miles long and the other fifty-two miles long, leading out of the San Joaquin River into the country lying west of the river and extending from the county of Fresno through the county of Merced into the county of Stanislaus the point of its beginning being described with certainty; that it also has distributing canals leading ·therefrom to the lands in the vicinity, for convenience of distribution, and maintains a dam in the river to divert the water therefrom into the canals; that by this means it has been diverting water from the river and carrying the same into canals and selling it for irrigation, watering of stock, and domestic uses "to the inhabitants of the counties of Fresno, Merced, and Stanislaus," and that it desires to divert from said river into said canals an additional flow of five hundred cubic feet per second and to carry the same in said canals and devote it to the same public use in the same manner, and that along its canals there is sufficient land upon which irrigation is necessary, the owners of which desire to use said water, to consume said additional quantity, sufficiently shows the situation and location of the canals, the place of use of the additional water sought to be condemned, and the territory to be served therewith.

ID.—WATER TO BE USED FOR "FARMING IN NEIGHBORHOODS."—Such complaint sufficiently shows that the plaintiff desires to take the additional water-rights sought to be condemned in behalf of the public use indicated by subdivision 4 of section 1238 of the Code of Civil Procedure by the words "supplying mines and farming in neighborhoods with water." The fact that there may be several separate farming neighborhoods along the canals of the plaintiff does not destroy its right of condemnation.

ID.—SUFFICIENT SHOWING OF SITUS OF PROPOSED USE.—In order to maintain an action to condemn water for public use, it is not required that the boundaries of the territory to which it is to be dedicated shall be alleged and proved with absolute certainty. The nature of the use is such that this cannot be done. The location of the proposed canal being shown, the *situs* of the proposed use is thereby fixed with sufficient accuracy.

ID.—WATER UNNECESSARILY RUNNING TO WASTE.—A right to divert water to be allowed unnecessarily to run to waste cannot be acquired, even by a judgment of condemnation. Such judgment, when given, would afford no protection for such a taking.

ID.—CONDEMNATION FOR USE OF CANALS AND CONDUITS—TAKING OF WATER TO BE CARRIED THEREIN IMPLIED.—The use described in such complaint is also one for which the right of eminent domain is given in subdivision 3 of that section, as "canals, aqueducts, reservoirs, tunnels, flumes, ditches, or pipes for conducting or storing water for the use of the inhabitants of any county . . . and all other public uses for the benefit of any county . . . or the inhabitants thereof, which may be authorized by the legislature." Such language necessarily implies, not only that property may be condemned for the canals and conduits mentioned, but that water may also be taken to be carried therein.

ID.—CONSTRUCTION OF STATUTE CONFERRING RIGHT OF EMINENT DOMAIN—SUPPLY TO ALL INHABITANTS OF COUNTY NOT REQUIRED.—Such subdivision of that section is to be liberally construed, with a view to effecting its objects and to promote justice, and so as to avoid absurd results. So construed, the subdivision must be held to confer the right of eminent domain for the use mentioned, notwithstanding the person in charge of the use does not propose to supply *all* of the inhabitants of the county with the water sought to be condemned, if the proposed use is for a part of the inhabitants thereof comprising a sufficiently large proportion of the inhabitants capable of using it in the particular territory as to destroy its character as a private use.

ID.—SUPPLYING INHABITANTS OF PARTICULAR SECTION OF COUNTY—EQUAL RIGHT OF ENJOYMENT.—The furnishing of water generally to the inhabitants of a particular section of a county is a public use, and it is not necessary, in order to so constitute it, that the water

should be obtainable by all the inhabitants of the immediate territory to which it is taken. It is sufficient if all who are capable of enjoying it have an equal right to it.

ID.—JUDICIAL NOTICE—IMPOSSIBILITY OF SERVING ALL INHABITANTS OF COUNTY BY ONE WATER SYSTEM.—The courts will take judicial notice of the fact that, with the possible exception of the city and county of San Francisco, there is no county in the state in which it is practicable to serve all of its inhabitants with water by means of one system of works.

ID.—PLEADING—ALLEGATIONS AS TO TERRITORY TO BE SUPPLIED—VARIANCE.—Notwithstanding the general allegations of the complaint that the water is to be devoted to sale and distribution to the inhabitants of Fresno, Merced, and Stanislaus counties, the specific facts alleged show that the water is to be taken only to the lands on the west side of the San Joaquin River, and proof of such specific facts does not constitute a substantial variance between the allegations and proof as to the extent of the use proposed.

ID.—CORPORATIONS—POWER TO CONVEY WATER FOR PUBLIC USE—ARTICLES OF INCORPORATION.—A foreign corporation, whose articles of incorporation state that it is formed and empowered to construct canals in California leading from the San Joaquin River, for the carriage of passengers and freight, and for the purpose of irrigation, and to supply water to the inhabitants of cities and towns in California, is authorized to carry water in its canals to be devoted to public use for the purposes of irrigation, navigation, and commerce.

ID.—FOREIGN CORPORATIONS—POWER TO DO BUSINESS IN CALIFORNIA.—Foreign corporations have always been allowed to enter this state and do any business therein that is within their corporate powers. Their right to do so has been recognized and sanctioned by our statute ever since April 4, 1870 (Stats. 1869–70, p. 881). For all purposes of every business within their capacity they are classed with domestic corporations, provided they comply with the statutes allowing them to do business here, and a statute which by necessary construction confers powers upon corporations in general is to be understood to confer that power upon foreign corporations doing business here as well as upon domestic corporations.

ID.—FOREIGN CORPORATION MAY EXERCISE RIGHT OF EMINENT DOMAIN.—Under section 1001 of the Civil Code, such a foreign corporation may acquire property by condemnation in this state for any public use specified in section 1238 of the Code of Civil Procedure.

ID.—STATUTE EXPRESSLY CONFERRING POWER ON CORPORATIONS ACTING AS COMMON CARRIERS.—Section 407 of the Civil Code, by expressly authorizing foreign corporations doing business as common carriers, to exercise the right of eminent domain, does not, by implication,

and through the operation of the maxim *expressio unius est exclusio alterius,* take away such right from all other foreign corporations.

ID.—CONSTRUCTION OF SECTION 407 OF CIVIL CODE—EFFECT OF CODIFICATION.—Section 407 of the Civil Code is a mere revision and codification, made in 1905 (Stats. 1905, p. 631), of section 1 of the act of 1880 (Stats. 1880, p. 21), and prior to its codification it would have had no effect upon the construction of section 1001 of that code and section 1238 of the Code of Civil Procedure, which were enacted in 1872, and conferred the right of eminent domain on all corporations, foreign or domestic. The embodiment of the statute in the code cannot have a different effect upon its meaning than an amendment thereof would have had, and as it did not repeal or modify the pre-existing law before its codification, it would not have that effect afterward.

ID.—WATER LOST IN TRANSMISSION BY SEEPAGE AND EVAPORATION.— The plaintiff is not debarred from condemning the full quantity of water asked for because a part of it would be lost in transmission to the place of use by seepage and evaporation. Some loss in this way is inevitable and it must be considered a part of that which is necessary to be taken to supply the actual use proposed.

ID.—USE OF PART OF WATER FOR PRIVATE PURPOSES—FURTHER CONDEMNATION FOR PUBLIC USE.—The fact that a water company is devoting to a private use a portion of the water to which it had acquired a right, does not prohibit it from condemning an additional quantity for public use. The fact that the water privately used and that sought to be condemned would be mingled together in the same canals is immaterial. If, after taking it, the plaintiff should convert it from public to private use, such conversion could be prevented.

ID.—CONDEMNATION OF PARTICULAR RIPARIAN RIGHT—PERSONS CLAIMING ADVERSELY CANNOT INTERVENE.—In an action by a water company, brought for the single purpose of condemning for public use the interest of a particular defendant, as riparian owner of certain land, in a specified quantity of the water of a stream, third persons not interested in the land in subordination to or in common with the defendant, but claiming adversely a paramount right to divert from the stream, at a point above the defendants' land and below the plaintiff's place of diversion, the same quantity of water as that sought to be condemned, have no right to intervene under section 387 of the Code of Civil Procedure.

ID.—JOINDER OF ADVERSE CLAIMANTS NOT AUTHORIZED.—Such adverse claimants have no interest in or right to the property sought to be condemned, and their joinder as parties to the condemnation suit is neither contemplated nor authorized by sections 1244, 1246, and 1247 of the Code of Civil Procedure.

ID.—NATURE OF RIPARIAN RIGHT—ACTIONABLE INTERFERENCE WITH.— A riparian right is local in its nature, and is parcel of the land to

which it attaches.  It enables the owner to enjoin an injurious interference with the stream, but it does so only when such interference affects the stream where it passes by his land.  A use of the stream above, if it does not affect it where it passes his land, is no violation of his right.

ID.—PARTIES—ACTION DOES NOT AFFECT ALL RIGHTS IN PART OF STREAM.—An action to condemn a particular riparian right is not an action to condemn absolutely all rights in and to a part of the flow of the stream, and persons having no right or interest in such riparian right are not proper parties to the action.

APPEAL from a judgment of the Superior Court of Merced County.  E. N. Rector, Judge.

The facts are stated in the opinion of the court.

Frank H. Short, F. G. Ostrander, and Edward F. Treadwell, for Appellant.

J. C. Campbell, for James J. Stevinson, Respondent.

H. A. V. Torchiana, and W. B. Bunker, for W. D. and J. R. Adams, Respondents.

James F. Peck, for East Side Canal and Irrigation Company, Respondent.

SHAW, J.—This is an action to condemn property for public use.  The plaintiff has been diverting water from the San Joaquin River and carrying it to lands in the San Joaquin Valley to be used for irrigation.  It desires to divert an additional flow of five hundred cubic feet per second from the river into its canals for the same public use.  This suit is begun to condemn the interest of the defendants in this additional quantity of water.  At the close of the plaintiff's case the defendant moved for a nonsuit and the same was granted by the court.  Judgment was rendered thereon and from this judgment plaintiff appeals.

1. The first ground of the motion for nonsuit was that the use to which the water proposed to be condemned and taken is to be devoted is not one of the public uses in behalf of which, under section 1238 of the Code of Civil Procedure, the right of eminent domain may be exercised.

It is conceded by plaintiff that the power of eminent domain is vested in the state, and that no person or corporation can avail himself or itself of that power, even in aid of a recognized public use, unless the state has granted to such person or corporation a right to exercise the power for the particular use proposed. There must be a statute conferring the power, either expressly or by necessary implication, and the proposed use must be one which comes within the terms of the grant. (*Southern Pacific R. Co.* v. *Southern C. R. Co.*, 111 Cal. 227, [43 Pac. 602]; *Moran* v. *Ross*, 79 Cal. 160, [21 Pac 547].) It is settled that the use of water for sale, rental, and distribution to the public generally is a public use. The only question for decision under this point is whether or not the statute confers the right of eminent domain upon a person who desires to condemn property to be devoted to such use.

The complaint alleges and the proof shows that the plaintiff owns two large canals leading out of the San Joaquin River into the country lying west of the river and extending from the county of Fresno through the county of Merced into the county of Stanislaus. One of these canals is seventy-two miles long and the other fifty-two miles long. It also has distributing canals leading therefrom to the lands in the vicinity, for convenience of distribution, and it maintains a dam in the river to divert the water therefrom into the canals. By this means it has been diverting water from the river and carrying the same into canals and selling it for irrigation, watering of stock and domestic uses "to the inhabitants of the counties of Fresno, Merced and Stanislaus," as it alleges. It also appears that it desires to divert from said river into said canals an additional flow of five hundred cubic feet per second and to carry the same in said canals and devote it to the same public use in the same manner, and that along its canals there is sufficient land upon which irrigation is necessary, the owners of which desire to use said water, to consume said additional quantity. The point where the canals begin and their present terminus are described with substantial accuracy. The canals are themselves permanent landmarks and, consequently, the termini being described, the situation and location of the canals, the place of use of the water to be con-

demned and the territory to be served therewith, are all thereby for all practical purposes properly pleaded.

We think this sufficiently shows that the plaintiff desires to take the water-rights sought to be condemned in behalf of the public use indicated by subdivision 4 of section 1238 of the Code of Civil Procedure by the words "supplying mines and farming in neighborhoods with water." While there is a general allegation in the complaint that the water is to be "sold to the inhabitants" of the three counties named, the specific facts alleged as to the method by which the water has been diverted, carried, and distributed and by which it is proposed to take, carry, and distribute the additional water, the place of use designated in the complaint and shown by the evidence and the purposes to which it is to be applied, show with reasonable certainty that the water is, in point of fact, to be supplied to farming neighborhoods, or "to farming *in* neighborhoods," as the last amendment to the section expresses the idea. The fact that there may be several separate farming neighborhoods along the very extensive canals of the plaintiff does not destroy its right. That a person engaged in supplying several such neighborhoods should have the right of eminent domain to obtain property therefor was evidently the object contemplated by the last amendment inserting the word "in" in the phrase "farming in neighborhoods." It may be that without this word the right to condemn for more than one neighborhood would have existed, but the insertion of this word implies that the main idea was the supplying of farming operations with water and that more than one neighborhood might receive water from the same system of works.

The law does not require, in order to maintain an action to condemn water for public use, that the boundaries of the territory to which it is to be dedicated shall be alleged and proven with absolute certainty. The nature of the use is such that this could not be done. A railroad, a highway, or a public building, has a fixed location to which all who desire to use them must come. It is not so with water devoted to public use. In that case the public service consists in conducting the water to the consumers, or to some convenient place where they can obtain it. Main canals are built from the source of supply to and through the territory to be supplied and both the landowners whose lands abut thereon and those who can

run a private ditch thereto are allowed to have the water at the fixed rates. The territory is also usually enlarged by means of lateral distributing canals, which are also available for use in the same way. Not every landowner who could do so may apply for the water. Those who take it one year may not do so the next and their portions may be furnished to others. It is also the fact that after the lower levels are saturated by a few years continuous irrigation such land will require much less water than before and the same quantity of water may then be distributed over a much larger territory. For these reasons it is impossible to say, in advance, or at any particular time, precisely what will be the boundaries of the territory served or to be served with the water. The interests and protection of the persons whose water-rights are to be condemned for public use, do not make it necessary to give such precise description. The location of the proposed canal being shown, the *situs* of the proposed use is thereby fixed with sufficient accuracy.

It is perhaps unnecessary to add that a right to divert water to be allowed unnecessarily to run to waste, cannot be acquired, even by a judgment of condemnation. Such judgment, when given, would afford no protection for such a taking.

We think also that the use described in the complaint is one for which the right of eminent domain is given in subdivision 3 of said section, as "canals, aqueducts, reservoirs, tunnels, flumes, ditches, or pipes for conducting or storing water for the use of the inhabitants of any county, . . . and all other public uses for the benefit of any county, . . . or the inhabitants thereof, which may be authorized by the legislature."

This language necessarily implies, not only that property may be condemned for the canals and conduits mentioned, but that water may also be taken to be carried in the canals and ditches. This precise question was decided in *Northern etc Co.* v. *Stacher*, 13 Cal. App. 409, [109 Pac. 896], by the third district court of appeal. The question is elaborately and ably discussed and the decision received the approval of this court, as is evidenced by the fact that it denied an application for a rehearing thereof. It follows from this decision that water may be condemned and taken for public use by any person

or corporation proposing to apply it "to the use of the inhabitants of any county."

The defendants claim that this subdivision does not confer the right of eminent domain for the use mentioned unless the person in charge of the use proposes to supply all of the inhabitants of the county, and that if the taking is for the use of a particular district or territory of the county only, it is not authorized under this subdivision. There can be no doubt that the furnishing of water generally to the inhabitants of a particular section of the county is a public use. It is not even necessary, in order to constitute a public use, that the water should be obtainable by all the inhabitants of the immediate territory to which it is taken. It may be a public use, although all persons within that territory cannot enjoy it. It is sufficient if all who are capable of enjoying it have an equal right to it. For example, it has been held that water devoted to the use of all the landowners within a specified territory, on equal terms to all, and open to all, for the irrigation of their lands, is devoted to a public use. (*Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 161, [41 L. Ed. 369, 17 Sup. Ct. Rep. 56] ; *Merrill* v. *Southside I. Co.,* 112 Cal. 426, [44 Pac. 720].)

Where a statute "is fairly susceptible of two constructions one leading inevitably to mischief or absurdity, and the other consisting of sound sense and wise policy, the former should be rejected and the latter adopted." (*In re Mitchell,* 120 Cal. 386, [52 Pac. 800].) "A construction should not be given to a statute, if it can be avoided, which will lead to absurd results, or to a conclusion plainly not contemplated by the legislature." (*Merced Bank* v. *Casaccia,* 103 Cal. 645, [37 Pac. 649].) The section is also subject to the rule that its provisions are to be liberally construed, with a view to effecting its objects and to promote justice. (Code Civ. Proc., sec. 4.)

It is a fact, of which the court may well take judicial notice, that there is no county in the state in which it is practicable to serve all of its inhabitants with water by means of one system of works. The topography will not permit it. The city and county of San Francisco, if it should be classed as a county, is perhaps an exception. But it is classed separately in the subdivision referred to. If this part of the statute is to be given the effect here claimed the result is that it will

be wholly ineffectual. In the entire history of the state, it is safe to say, no person or corporation has ever seriously and in good faith proposed to supply all of the inhabitants of any county with water through one system of works or from one source. No such proposition ever will or can be honestly made. The result of this interpretation therefore will render the statute wholly ineffectual as well as absurd. In considering a statute it is necessary to asume that the legislature intended it to have some effect. There must have been some purpose in view which led to its enactment. The obvious purpose of this section as a whole was to confer the right of eminent domain upon persons engaging in public service for the various purposes described. This particular clause was intended to encourage and assist those proposing to establish systems of waterworks for the supplying of the public. It was to facilitate the transportation of water from a source where it was comparatively useless to places where it would be useful and would promote the general welfare and prosperity and of furnishing it at such places to those in need of it. In order to further this object the statute should have such interpretation as will make it effectual for that purpose if it is reasonably possible to do so. It will be noted, therefore, that the clause does not use the word "all" in connection with the word "inhabitants." The phrase is "for the use of the inhabitants of any county." According to a well recognized usage this description would be filled by one who supplied water for the use of the inhabitants of a considerable part of the county although he did not or could not supply it to all the inhabitants thereof. The language may be as well applied if the word "inhabitants" is taken as descriptive of the character or *status* of the beneficiaries as it would be if the word is taken as designating the number to whom it is to be supplied or the area to which the use must extend. But a more obvious purpose in the use of the phrase is seen when the clause is taken in connection with the preceding clause of the subdivision. The two clauses together read as follows: "Public buildings and grounds for the use of any county, incorporated city, or city and county, village, town or school district; ponds, lakes, canals, aqueducts, reservoirs, tunnels, flumes, ditches or pipes for conducting or storing water for the use of the inhabitants of any county, incorporated city, or

city and county, village or town.'' The uses mentioned in the clause preceding the semicolon are those for organized public corporations and are for purely public purposes; those in the second clause are for the individual members of the community for their individual private use and for the benefit of their persons or their property. It was to distinguish private individuals from public corporations that the word ''inhabitants'' was used in the second clause, and not for the purpose of expressing the idea that the takings mentioned in the second clause were to be limited to cases where all the inhabitants were to be the beneficiaries. It was intended to distinguish between a taking for the organized public and a taking for persons as members thereof. In view of these considerations we think it should be held to be a sufficient compliance with the terms of this subdivision if the proposed use of water is for a part of the inhabitants of a county comprising a sufficiently large proportion of the inhabitants capable of using it in the particular territory ''as to destroy its character as a private use,'' as was said in *Lindsay* v. *Mehrtens*, 97 Cal. 678, [32 Pac. 802]. The proof shows that the plaintiff proposes to distribute the water generally to the inhabitants of a very large area of the three counties mentioned, chiefly for the irrigation of their lands and also for domestic uses and for the watering of stock and incidentally to some towns and villages which have grown up along the routes of its canals. It is one of the largest irrigation enterprises in the state and serves water to over one hundred and fifty thousand acres of land. We think the use it proposes to make of this water is one for which it is authorized to exercise the right of eminent domain under section 1238.

It is further suggested in this connection that the nonsuit was properly granted because there is a fatal variance between the allegations as to the extent of the use proposed and the proof thereof, in this: That the allegation is that the water is to be devoted to sale and distribution to the inhabitants of Fresno, Merced, and Stanislaus counties, whereas the proof shows that it can be sold and distributed only to inhabitants along the lines of its canals and wholly in the territory west of the river. While there is a general allegation to this effect, as before stated, the specific facts alleged show clearly

enough that the water is to be taken only to the lands on the west side. There is no substantial variance.

2. The plaintiff is a Nevada corporation. The defendants contend that its articles of incorporation do not designate the application of water to public use as one of its corporate powers, and further, that a foreign corporation cannot, under the laws of this state, exercise the power of eminent domain. For these reasons they contend that the nonsuit was properly granted.

The articles state that the plaintiff corporation is formed and empowered to construct canals in California leading from the San Joaquin River, for the carriage of passengers and freight, and for the purpose of irrigation, and to supply water to the inhabitants of cities and towns in California. These powers are sufficient to authorize it to carry water in its canals to be devoted to public use for the purposes of irrigation, navigation, and commerce.

The words "any person," in section 1001 of the Civil Code, includes any public or private corporation, as well as any natural person, and by the terms of the section, any such person may, "without further legislative action" acquire property by condemnation for any public use specified in section 1238 of the Code of Civil Procedure, and in doing so becomes "an agent of the state" and a "person in charge of the use" for that purpose (*Pasadena* v. *Stimson,* 91 Cal. 248, [27 Pac. 604]). The state may authorize foreign corporations to exercise this right. (*Gilmer* v. *Lime Point,* 18 Cal. 255.) Foreign corporations have always been allowed to enter this state and do any business therein that is within their corporate powers. Their right to do so has been recognized and sanctioned by our statutes ever since April 4, 1870 (Stats. 1869–70, p. 881). For all purposes of every business within their capacity they are classed with domestic corporations, provided they comply with the statutes allowing them to do business here, and a statute which by necessary construction confers powers upon corporations in general, is to be understood to confer that power upon foreign corporations doing business here as well as domestic corporations. The aforesaid section would, therefore, appear to give them the right of eminent domain on the same terms as other persons and corporations. There would be no doubt of this proposition were it not for section 407

of the Civil Code, expressly authorizing foreign corporations
doing business as common carriers to exercise the right of
eminent domain. The defendants claim that by the opera-
tion of the maxim *expressio unius est exclusio .alterius,* this
section, by implication, takes away such a right from all
other foreign corporations. The part of the section relating
to this subject is as follows: ''Every rai_way or other corpora-
tion organized for the purpose of carrying freight or pas-
sengers under or by virtue of the laws of the United States,
or of any state or territory thereof, may build railroads, exer-
cise the right of eminent domain, and transact any other busi-
ness which it might do if it were created and organized under
or by virtue of the laws of this state, and has the same rights,
privileges, and immunities, and is subject to the same laws,
penalties, obligations, and burdens as if created or organized
under and by virtue of the laws of this state.'' The effect of
this provision was considered by the district court of appeal
for the third district in *Western Union Tel. Co.* v. *Superior
Court,* 15 Cal. App. 679, [115 Pac. 1091, 1100], an application
for a writ of review. That court reached the conclusion that
the right to exercise the power of eminent. domain was not
thereby withheld from foreign corporations which were not
common carriers. Upon petition for rehearing, this court de-
clined to express any opinion on that question, saying that it
did not affect the jurisdiction of the superior court, and that,
therefore, it could not be material in *certiorari.* Upon con-
sidering the question more fully, we agree with the district
court that section 407 was not intended to prevent other cor-
porations than those described therein from exercising the
right of eminent domain.

The section is a mere revision and codification of section 1
of the act of 1880 (Stats. 1880, p. 21). The codification was
made in 1905 (Stats. 1905, p. 631). Some verbal changes are
made, but it is essentially the same, and the particular provi-
sion in question is not altered at all. Section 1001 of the
Civil Code and section 1238 of the Code of Civil Procedure
were enacted in 1872. Their effect, as we have seen, was to
confer this right upon all corporations, foreign or domestic,
public or private, for the particular uses designated in section
1238. The act of 1880 did not purport to take away any
right of this character. It was an entirely independent enact-

ment and it is clear that prior to its codification it would have no effect whatever upon the construction of sections 1001 and 1238 aforesaid. The maxim *expressio unius,* etc., is not of universal application. "What is expressed is exclusive only when it is creative, or in derogation of some existing law, or of some provision in the particular act. The maxim is applicable to a statutory provision which grants originally a power or right. In such cases the power or right originates with the statute and exists only to the extent plainly granted." (2 Lewis Sutherland's Statutory Construction, sec. 491.) If this statute had been the only one on the subject there would be good reason for saying that no other corporations would have the power, for the power would remain in the state except as granted by statute. But as the power had been given to all other corporations by statutes of which this was not an amendment, the reason for the application of the maxim is altogether wanting.

Furthermore, the incorporation of the statute in the code cannot be said to have a greater effect upon its meaning than an amendment thereof would have had. Where a statute is amended, the parts which are not altered are to be considered as having been the law from the time when they were enacted (Pol. Code, sec. 325). Hence, the meaning and effect of the statute of 1880 would not be changed by putting it in the code, and if it did not repeal or modify the pre-existing law before its codification, it would not have that effect afterward.

3. The objection that the proof showed that the water was not necessary to public use, except for a portion of the year, if it ever was of any force, was removed by the filing of an amended complaint wherein the taking of the water is limited to the season when it is actually required, the dates being specifically stated.

4. There is no merit in the proposition that the plaintiff cannot condemn the full quantity asked for because a part of it would be lost in transmission to the place of use by seepage and evaporation. Some loss in this way is inevitable and it must be considered a part of that which is necessary to be taken to supply the actual use proposed. There was evidence to the effect that there would be no loss of this character which could be prevented by reasonable care or precaution.

5. One ground of the motion was that it appeared that the plaintiff's intention was to devote the water to be condemned, or a part of it, to private use. There seems to be no real foundation for this claim. Prior to the beginning of this action the plaintiff was, and for many years had been, diverting from the river a flow of seven hundred and sixty cubic feet per second into its canals and selling the same for irrigation and other purposes. To this quantity it had acquired a right. A part of it was delivered to Miller & Lux annually for a fixed price under a contract made in 1871 with its predecessor in interest, whereby said predecessor was paid some thirty thousand dollars for the building of the canals and acquired from Miller & Lux rights of way therefor. There were subsequent changes therein, not important to the question. The plaintiff and its said predecessor had also been taking for several years the five hundred cubic feet per second the right to which is here sought to be condemned and had been devoting the same to public use, but neither of them had acquired any right to do so as against the defendants. This suit was begun to obtain that right. Conceding but not deciding that the water delivered to Miller & Lux, under the contract of 1871, was taken for private use, it does not follow that the five hundred cubic feet here in controversy is to be taken for that purpose. The contrary is asserted by the plaintiff and there is nothing to show that it is not stated in good faith. The plaintiff is already bound by the contract of 1871 to furnish the Miller & Lux water and it has done so out of the seven hundred and sixty cubic feet to which it had a right. The present proposed taking is an altogether distinct appropriation of an additional quantity. This claim seems to be partly founded on the fact that the water is to be mingled together in the canals. This fact seems to be immaterial. It does not affect the public use of the five hundred cubic feet. If, after taking it, the plaintiff should convert it from public to private use such conversion could be prevented. But as there is no evidence of such intent and it cannot be anticipated in this way, the mere assertion that plaintiff may in the future wrongfully do so cannot defeat its right to the condemnation.

6. We think the lower court erred in permitting J. R. Adams, W. D. Adams, and the East Side Canal and Irrigation

Company to become defendants to the action and to file answers to the complaint, and in refusing to strike out such answers on motion of the plaintiff. Perhaps such an error would not, in every case, be sufficient to require a reversal of the judgment. It might be that no substantial injury would ensue therefrom. We need not say whether it would be sufficient in this case or not, since the judgment must be reversed for other reasons. The complaint alleged that the property sought to be condemned was the interest of the Stevinson Company, as riparian owner of certain lands, in the five hundred cubic feet of water which plaintiff proposed to take for public use. The other original defendants had or claimed some lien upon the land of the Stevinson Company and claimed under that company. The above named intervening defendants did not claim under the Stevinson Company. They each claimed adversely to it. Their claim was that they had, apparently by continuous adverse use, acquired from the Stevinson Company the right to divert from the river, at a point below plaintiff's dam and above the Stevinson land, the identical five hundred cubic feet of water which plaintiff proposed to take and for which it proposed to condemn the Stevinson right. Calling it the same does not make it so, nor does the fact, if it be a fact, that the water is the same, that is to say, that if plaintiff did not take it, the same would be diverted by said interveners and would not reach the Stevinson land, make it the same right. The condemnation of this water-right of Stevinson for the protection of plaintiff's diversion, would not give plaintiff any right whatever against any other person and it would not at all affect the rights of the interveners. The plaintiffs taking had been interfered with by the Stevinson Company, or its predecessor in ownership of the land. Plaintiff desired to prevent such interference in the future by condemning the right in virtue of which the interference was made. The interveners had no interest in the Stevinson land, or in the riparian rights pertaining thereto, which, alone, the plaintiff sought to condemn. It was this riparian right which was the subject matter of the litigation. The action was not a suit in equity to determine the title to the water, generally, or one in which a general adjudication of such title could be made. It was a special proceeding for a particular purpose—

namely, to condemn the Stevinson right for the benefit of the plaintiff as the purveyor of the public use. In such a controversy, third persons not interested in the land in subordination to or in common with the person whose right was sought to be taken, but claiming adversely, have no right to intervene under section 387 of the Code of Civil Procedure.

We have considered all the grounds stated in the motion for a nonsuit. As none of them is sustained, it follows that the court erred in giving judgment for the defendants.

The judgment is reversed.

Henshaw, J., Melvin, J., Lorigan, J., and Angellotti, J., concurred.

SLOSS, J. dissenting.—I dissent. In my opinion the nonsuit was properly granted on the first ground stated in the motion, viz., that the purpose for which condemnation is sought is not one of the public uses in behalf of which, under section 1238 of the Code of Civil Procedure, the right of eminent domain may be exercised.

The majority of the court has reached the conclusion that the plaintiff's claim may be sustained under either subdivision 3 or subdivision 4 of section 1238. With respect to subdivision 4 ("the supplying of mines and farming [in] neighborborhoods with water") it may be said that the plaintiff itself makes no contention that its complaint stated or that its proof established a right under this subdivision. The complaint plainly shows that it was framed with the intent of making a case under subdivision 3, and the briefs of the appellant virtually concede that a claim of right to condemn under subdivision 4 was not presented and is not involved. Under these circumstances, this point may be passed with the statement that I believe the concession to have been no more than was required by the state of the record.

The question, then, is whether the proof supported the allegations of the complaint that plaintiff intends to devote the water in question to the purposes of sale, rental, and distribution to the inhabitants of the counties of Fresno, Merced, and Stanislaus. It appears that plaintiff has been furnishing water and intends to continue to furnish it to a large part of the territory and a considerable number of the inhabitants on

the west side of the San Joaquin River. There is no pretense that it has brought the water, or intends, or is able to do so, within the reach of the extensive territory and large population on the other side of the river, within the counties named. Without going any further into particulars, it may be said that the territory which plaintiff is able to furnish with water constitutes far less than one-half of the area of each county named, indeed, far less than one-half of the irrigable lands of any of said counties. On this state of facts, I think that the district court of appeal for the third appellate district, in which this appeal was originally pending, was right in expressing the view that in order to make out a case under subdivision 3 of section 1238, "the canals and other contrivances used by plaintiff should be so located and constructed and its business so conducted as to make the water available generally to the inhabitants of these counties for the purposes stated."

The language of the statutory provision under consideration is this: "Subject to the provisions of this title, the right of eminent domain may be exercised in behalf of the following public uses: . . . 3. . . . ponds, lakes, canals, aqueducts, reservoirs, tunnels, flumes, ditches, or pipes for conducting or storing water for the use of the inhabitants of any county, incorporated city, or city and county, village or town . . ." The contention of the appellant, sustained by the majority opinion, is, in effect, that a public service corporation engaged in the sale, rental, and distribution of water within one or more counties, which is ready to furnish, and has canals and works sufficient to furnish such water to so great a number of the inhabitants of such county or counties as to make the character of the use public rather than private, is engaged in the sale, rental, and distribution of water "for the use of the inhabitants of any county." In other words, the statute, thus construed, authorizes the condemnation of property in behalf of ponds, lakes, canals, etc., for constructing or storing water for the use of any number of people residing upon any number of parcels of land anywhere within the state, provided only that the use be of a public character. For, since the entire area of the state is divided into counties, it is apparent that canals or other conduits devoted to supplying water to any of the inhabitants of the state are used for the

inhabitants of one or more counties.   This construction seems to me to make meaningless most of the language in the part of the subdivision under consideration.   If all that was intended to be required was that the use should be public, there would have been no need of inserting the words "incorporated city, or city and county, village or town," or, indeed, the word "county."   This is, of course, contrary to the well settled rule requiring a court in construing a statute to give meaning and effect to every word contained in it, if reasonably possible.

Section 1238 does not provide that the right of eminent domain may be exercised in behalf of *every* public use.   What it does is to enumerate certain public uses, and to declare that the power of eminent domain may be exercised in behalf of the particular uses enumerated.   That the corporation plaintiff is in the control of a public service is not conclusive upon' the question of its right to exercise the power of eminent domain.   It must appear in addition that the statute has authorized the exercise of this power for the particular purpose for which it is sought to be exercised.

It must be assumed that the legislature had some purpose in limiting the right of eminent domain to the public use of conducting or storing water *"for the use of the inhabitants of any county, incorporated city, or city and county, village or town."*   The idea in the minds of the lawmakers evidently was that the right of eminent domain in aid of the furnishing of water was not to be granted in every case of a public use, but only where the water was for the use of the inhabitants of the governmental subdivisions enumerated.   It is of the essence of a public service that the service shall be compellable (to the extent of its capacity and subject to reasonable restrictions) by all the members of the community to whose use the subject of the service is appropriated.   (Wyman on Public Service Corporation, sections 273, 344; *Lux* v. *Haggin,* 69 Cal. 269, 306, [4 Pac. 919, 10 Pac. 674].)   When, then, the statute speaks of furnishing water to the inhabitants of a county, city, city and county, village or town, it contemplates a service available to the inhabitants, generally, of the respective governmental territories, not a service to such part of the territory as may be selected by a water company.   The inducing cause for granting the right was the benefit of the

public to be served, rather than the advantage of the individual or corporation seeking to supply water. The existence of the right, by the language of the statute, was made to depend upon the extent of the public to be so served. This mode of measurement is totally destroyed and much of the language of the subdivision deprived of any meaning, by holding that the statute authorizes the exercise of eminent domain in behalf of canals, etc., for supplying water to the inhabitants of any part, so extensive as to escape the objection that the use is private, of a county, a city, a village, or a town. Let us test the question by supposing a complaint in which the plaintiff alleges that it is engaged in furnishing water to the inhabitants of a supervisorial district and that it desires to condemn certain private water-rights in order to supply such use. Assuming the service to be such as to constitute the use a public one, could it be contended that, because the inhabitants of the district are inhabitants of a county, the right of eminent domain is conferred by the statute under consideration? It seems to me that the question carries its own answer and that answer is one that requires the affirmance of the order appealed from.

On all other matters discussed in the main opinion I agree with the views therein expressed.

Rehearing denied.

In denying a rehearing, the court in Bank rendered the following opinion on December 20, 1912:

SHAW, J.—In a petition for rehearing, the respondents claim that the part of the opinion of the court herein relating to the admission of the East Side Canal and Irrigation Company and others as defendants, being the part numbered 6, is contrary to the provisions of sections 1244, 1246, and 1247 of the Code of Civil Procedure. We deem it advisable to restate the position of the court more at length.

Section 1244 requires the complaint in a condemnation suit to state "the names of all owners and claimants of the property," as defendants. Section 1246 provides in substance that any person occupying, or having or claiming any interest in the property sought to be condemned, may appear, plead and defend as to his interest. Section 1247 provides that in such

actions the court shall have power to hear and determine all adverse or conflicting claims to the property sought to be condemned.

It is obvious from this language that these provisions do not contemplate or authorize the admission of a person as a party who does not show that he has some interest in or right to the property sought to be condemned, or of a person whose statement of his right shows that he has no such interest.

All that these parties had, or claimed to have, was the right to divert from the stream of the San Joaquin River, at a point about thirty miles below plaintiff's dam and twenty miles above the Stevinson land, a flow of water equal to five hundred cubic feet per second.  They claim that this right was paramount and superior to the riparian rights of the Stevinson land in the river passing that land.  If this is true, then it follows, necessarily, that the right or interest of those parties constituted no part of the riparian rights of the Stevinson land in the river.  Their diversion took it out of the river above, it was consumed by use in irrigation, it never again reached the river and it formed no part of the river passing the Stevinson land, to which the riparian rights attached.

The riparian right is parcel of the land to which it attaches. It is local in its nature.  It enables the owner to enjoin an injurious interference with the stream, but it does so only when such interference affects the river where it passes by his land.  If he cannot show this, he cannot complain of the interference.  A use of the stream above, if it does not affect it where it passes his land, is no violation of his right.  The intervening defendants having, as they say, a paramount right to take out the water above, such water ceases to be a part of the river which rightfully reaches the Stevinson land and its riparian rights do not extend to or include it.  To say that the riparian right of the Stevinson land does include it, would be to admit that the right claimed is not paramount to the riparian right.  The right of these defendants is, therefore, a right of property entirely separate, distinct from and unconnected with the riparian rights of the Stevinson Company in the river, which latter constitutes the property sought to be condemned.

The argument of these parties is based upon the idea that the plaintiff is seeking to condemn absolutely all rights to a

part of the flow of the river equal to five hundred cubic feet per second. Hence they claim that every person having or claiming any interest in the stream is interested in the property sought to be condemned and may become a party defendant. Every other appropriator of water from the river and every owner of land riparian thereto from Firebaugh to Antioch, a distance of something over one hundred miles, could, upon this theory, insist upon becoming a party to the action. We need not determine whether this would be so or not, for this is not such a case. The property sought to be condemned is not the general or particular right of any and every person to five hundred cubic feet per second of the water of the San Joaquin River at plaintiff's dam, but is merely the riparian right attaching to the Stevinson land, so far as it may affect, or be affected by, the proposed diversion of that quantity by the plaintiff. The suit affects nobody and interests nobody except persons having some right or interest in the Stevinson land. The facts stated by these parties show that they have no such right or interest. Hence they were not proper parties to the action.

The petition for rehearing is denied.

Angellotti, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.