[Civ. No. 1802.   Third Appellate District.—March 21, 1918.]

GRAVELLY FORD CANAL COMPANY (a Corporation), Respondent, v. POPE & TALBOT LAND COMPANY (a Corporation), Appellant.

EMINENT DOMAIN — PRIVATE USE — CONDEMNATION PROHIBITED.—The power of eminent domain cannot be used by a private person to promote private enterprises no matter how necessary or advantageous it may be to their success or however beneficial to the public.

ID.—IRRIGATION ACT OF 1911—CONDEMNATION FOR PRIVATE USE NOT AUTHORIZED.—The act regarding irrigation and declaring the same to be a public use, approved May 1, 1911 (Stats. 1911, p. 1407), does not authorize condemnation for irrigation purposes by an individual for his own private use, but for the use of the public only, since the statute means just what would be meant had section 1238 of the Code of Civil Procedure been amended by adding "irrigation" to the many "public uses" therein enumerated, in behalf of which the right of eminent domain may be exercised.

ID.—PUBLIC USE.—Public use means use by the public, and to make a use public, a duty must devolve on the person or corporation holding property appropriated by right of eminent domain to furnish the public with the use intended, and the public must be entitled, as of right, to use or enjoy the property taken.

APPEAL from a judgment of the Superior Court of Madera County.   W. M. Conley, Judge.

The facts are stated in the opinion of the court.

J. W. Dorsey, and W. E. Cashman, for Appellant.

Edward F. Treadwell, for Respondent.

CHIPMAN, P. J.—Action to condemn a right of way for a canal. A general demurrer to the complaint was overruled and defendant answered; a jury was waived, the cause was tried by the court, and plaintiff had judgment, from which defendant appeals on the judgment-roll alone.

It is alleged in the complaint that plaintiff is a corporation organized under the laws of this state and was incorporated "for the purpose of distributing, supplying, and delivering water for irrigation purposes, and for domestic use, to the stockholders of said corporation, and to the owners of its capital stock, and to that end to construct canals for the appropriation, diversion and conveyance of water," etc.; that pursuant to said purposes, and on May 23, 1912, said corporation "posted a notice of appropriation of one thousand five hundred cubic feet of water of the San Joaquin River flowing per second by means of a ditch taking out of the north bank of the said San Joaquin River," etc., particularly describing the ditch to be one hundred feet wide at the bottom and 125 feet wide at the top and three and one-half feet in depth, over and across certain lands, and among others three sections of land owned by defendant; that for said purpose "it is necessary that the said plaintiff acquire a right of way two hundred feet wide along the line of said canal as above set forth"; that defendant's said land is "about midway between the termini of the said canal, and it is impossible to construct the same for the purposes for which it was intended without passing by, through, over, and upon the said lands; . . . that the purpose of the said canal is to irrigate seventeen thousand acres of land, more or less, situate under the said canal and to the west thereof, and in the townships above referred to."

As showing the reasons and necessity for granting the relief prayed for, it is alleged "that the climate of the San Joaquin Valley in which the said land is situated is by nature arid, and the rainfall in said valley is extremely light and insufficient with which to raise and mature profitable crops without artificial irrigation; and said land is by nature arid and will produce little or no crops without artificial irrigation, and without irrigation it is of little value, but the said land is extremely fertile and productive, and can be tilled, plowed, cultivated, and planted to alfalfa, trees, and vines, cereals, and other crops, and can then become inhab-

ited and become the dwelling place of a large number of people, and the value of the said land and the assessed value thereof would be greatly increased by the irrigation thereof, and the assessed valuation of the said land for the purposes of taxation would likewise be increased by the irrigation of the said land, and by reason of the irrigation thereof valuable improvements would be placed upon the said land, and if the said land can be properly irrigated and proper works constructed for the irrigation thereof, the value thereof and the assessed value thereof will be greatly increased, and further valuable improvements can and will be placed upon said lands and valuable crops of alfalfa, trees, vines, cereals, and other crops can be planted and grown thereon, and the irrigation of said land is a public use and a public necessity, and is the public use for which plaintiff seeks to acquire the right of way described herein and is the public use in behalf of which it is sought to construct, maintain, and operate the canal aforesaid. . . . That the use for which the said right of way is sought to be acquired is a public use within the meaning of an act, entitled: 'An act regarding irrigation and declaring the same to be a public use,' approved May 1, 1911, (Stats. of 1911, p. 1407), and the said right of way is necessary to the said public use, and the said plaintiff is in charge of the public use for which the said property is sought to be acquired.''

The prayer is that said right of way be condemned ''for the public use aforesaid, and acquired by the said plaintiff in accordance with the provisions of Title VII, Part III, of the Code of Civil Procedure.''

The court made the following findings of fact: 1. ''That each and every, all and singular the allegations of plaintiff's complaint are and each thereof is true. 2. That all of the capital stock of the said plaintiff is owned by Miller & Lux, Incorporated (a corporation), and all of the land situated under the flow of the said canal and intended to be irrigated therefrom is owned by the said Miller & Lux Incorporated, and the plaintiff was created to irrigate the lands of said Miller & Lux Incorporated, and none other. 3. That the water diverted by the said plaintiff is diverted from the San Joaquin River by means of a canal taking out at a point referred to in the complaint, and said plaintiff has never applied for or received from any official of the United States

government any special permission or permit or authority to construct the said canal or to divert the water of the San Joaquin River into the same."

As conclusions of law, the court found "that plaintiff is entitled to acquire and condemn the property described in the complaint," subject to certain conditions not necessary to be stated, and entered judgment accordingly.

It is conceded that the condemnation sought is for the purpose of enabling Miller & Lux, a corporation, the owner of all the stock of plaintiff company, to irrigate its lands "and none other." The question is simply this: Does the statute confer the right of eminent domain upon a person who desires to condemn property for irrigation and to be devoted to his private use only?

From the first case down to the last found in the reported decisions of the supreme court and appellate courts of this state it has uniformly been held that the power of eminent domain cannot be used by a private person to promote private enterprises, no matter how necessary or advantageous it may be to their successor or however beneficial to the public. In *Gilmer* v. *Lime Point,* 18 Cal. 229, 251, the court said: "The phrase employed in the constitution is: 'Nor shall private property be taken for public use without just compensation.' The words 'public use' here mean a use which concerns the whole community, as distinguished from a particular individual or a particular number of individuals. . . . It may be a use in which but a small portion of the public will be directly benefited, as a street in a town, or bridge or a railroad, necessarily local in its benefits and advantages, though it must be of such a character as the general public may, if they choose, avail themselves of it." "But," said the supreme court in *Nickey* v. *Stearns Ranchos Co.,* 126 Cal. 150, 152, [58 Pac. 459], "in this state private property may not be taken or damaged for private use at all. It may be taken only for public use after just compensation made or paid. (Const., art I, sec. 14.)" The court said in *Amador Queen Mining Co.* v. *De Witt,* 73 Cal. 482, 485, [15 Pac. 74]: "The plaintiff cannot have a right of way through defendant's mine condemned for its use in working its own mine. The mine of defendant is his private property, and it is clear that the plaintiff asks for the condemnation in order that it may appropriate a way through that property

for its private use. This cannot be done." Cases to like effect might be multiplied. We do not understand respondent to deny that the foregoing is the rule in this state. *San Joaquin & K. R. Canal & Irr. Co.* v. *Stevinson*, 164 Cal. 221, [128 Pac. 924], is cited by respondent to the point that prior to the enactment of the statute of 1911, "one condemning for irrigation purposes was required to supply water to all who were capable of enjoying it." Respondent's contention is, as stated in its brief, "that it is in the power of the legislature to declare irrigation to be a 'public use,' whether the irrigation be by the public generally or by an individual for his own private use, and in answer to appellant's second contention respondent will contend that the statute of May 1, 1911 (Stats. 1911, p. 1407), (General Laws, p. 770), has made such a declaration and authorized condemnation for irrigation purposes, whether the public participate directly in the irrigation or not."

Appellant attacks the judgment on several grounds: First, if the act confers the power claimed for it, it is unconstitutional; second, that the act does not authorize condemnation for the use of an individual but only for the use of the public; third, that plaintiff did not receive any permit from the United States government before making the appropriation of the water which is to be carried through the canal along the right of way condemned by plaintiff in this case. Inasmuch as the judgment in this case as well as respondent's contention rests wholly upon the act of 1911, and, inasmuch as this is the first case arising under this statute which has been brought to the attention of a reviewing court, it is deemed proper to set forth the entire act. It is as follows:

"An act regarding irrigation and declaring the same to be a public use.

"[Approved May 1, 1911.]

"The People of the State of California, represented in senate and assembly, do enact as follows:

"Section 1. Irrigation in the State of California is hereby declared to be a public necessity and a public use, and the power of eminent domain may be exercised on behalf of such public use in accordance with the provisions of title VII, part III of the Code of Civil Procedure of the State of California. Provided that any person, firm or corporation, exercising the power of eminent domain and in control of

water appropriated for sale, rental or distribution, shall not, by this act, be relieved from the duty of furnishing water to irrigate the lands over which any right of way is obtained by condemnation for irrigation purposes as required by an act entitled, 'An act to regulate and control the sale, rental and distribution of appropriated water in this state, other than in any city, city and county, or town therein and to secure the rights of way for the conveyance of such water to the places of use,' approved March 12, 1885, or any other law now in force in this state.

"Sec. 2.   This act shall not repeal or modify an act entitled, 'An act to regulate and control the sale, rental and distribution of appropriated water in this state, other than in any city, city and county, or town therein, and to secure the rights of way for the conveyance of such water to the place of use,' approved March 12, 1885, and other acts supplemental thereto and amendatory thereof, or shall the same be construed to alter or change the law of the State of California as to the duty of any person, firm or corporation in charge of a public use to furnish water.

"Sec. 3.   This act shall be in force from and after its passage."

The statute referred to in the act (Stats. 1885, p. 95) declares in section 1 that "the use of all water now appropriated, or that may hereafter be appropriated, for irrigation, sale, rental, or distribution, is a public use, and the right to collect taxes or compensation for use of such water is a franchise, and except when so furnished to any city, city and county, or town, or the inhabitants thereof, shall be regulated and controlled in the counties of this state by the several boards of supervisors thereof, in the manner prescribed in this act."   Subsequent sections provide the procedure by which the supervisors are given the power to fix the "rates at which any person, company, association, or corporation, having or to have appropriated water for sale, rental or distribution, in each of said counties, may and shall sell, rent, or distribute the same."   Section 11 provides that, "whenever any person, company, association, or corporation shall have acquired the right to appropriated water, or shall have acquired the right to appropriate water in this state, such person . . . may proceed to condemn the lands and premises necessary to such right of way, under the pro-

visions of title seven, of part third, of the Code of Civil Procedure . . . and all the provisions of said code, so far as the same can be made applicable relating to the condemnation and taking of property for public uses, shall be applicable to the provisions of this act.''

''While the courts have not been in agreement on the precise meaning of the term 'public use,' it has been held, without a single dissenting voice, that it does not lie in the power of a state to authorize the taking of the property of an individual without his consent for the private use of another, even on the payment of full compensation.'' (10 Ruling Case Law, p. 27.) If, therefore, property can be taken only for a public use, either by an individual or corporation, it becomes important to understand what is meant by the term ''public use'' and upon what condition water may be taken for a public use.

The courts are not at one as to what constitutes public use for which property may be taken. ''One line of decisions holds that 'public use' means 'use by the public,' that is, public employment, and consequently that, to make a use public, a duty must devolve on the person or corporation holding property appropriated by right of eminent domain to furnish the public with the use intended, and the public must be entitled, as of right, to use or enjoy the property taken. The opposing view is that 'public use' means 'public advantage,' and that anything which tends to enlarge the resources, increase the industrial energies, and promote the productive power of any considerable number of the inhabitants of a section of the state, or which leads to the growth of towns and the creation of new resources for the employment of capital and labor, contributes to the general welfare and prosperity of the whole community and giving the constitution a broad and comprehensive interpretation, constitutes a public use.'' (10 Ruling Case Law, pp. 24, 26.)

There has grown up the further extreme view, grounded on statutory authority, which authorizes ''takings by a private individual to enable him to cultivate his land or to carry on his business to better advantage, in a community so situated that public sentiment approves of such takings, either because they are sanctioned by ancient custom, or because the natural prosperity of the state would be seriously

retarded if eminent domain could not be employed for such purposes.'' (Id.)

In interpreting the statute of 1911, we must, so far as possible, arrive at the legislative intent from the language itself. Considered in its most favorable light, the statute means just what would be meant had section 1238 of the Code of Civil Procedure been amended by adding ''irrigation'' to the many ''public uses'' therein enumerated, in behalf of which the right of eminent domain may be exercised. Why the object was not accomplished by a code amendment instead of by a separate statute is not apparent, for numerous objects have been added to section 1238 since 1911. But whatever the reason, the power of eminent domain may be exercised only as provided in Title VII, Part III, of the Code of Civil Procedure, and may only be exercised in behalf of irrigation as a public use, for the statute so declared. Unless there is something in the act to indicate otherwise, we must presume that the legislature used the terms ''public use,'' in the act of 1911, in the sense it had used them in section 1238 of the Code of Civil Procedure and as interpreted to mean as used in the constitution. There can be no question as to the position of our supreme court upon this question. It has consistently held that ''public use'' means ''use by the public,'' and that to make a use public, a duty must devolve on the person or corporation holding property appropriated by right of eminent domain to furnish the public with the use intended, and the public must be entitled, as of right, to use or enjoy the property taken. *Thayer* v. *California Development Co.,* 164 Cal. 117, 126, [128 Pac. 21], where the terms ''public use'' are defined and many cases cited. (*Gilmer* v. *Lime Point,* 18 Cal. 229.)

· In declaring in the act of 1911 that irrigation is a public use and that ''the power of eminent domain may be exercised on behalf of such public use in accordance with the provisions of Title VII, Part III of the Code of Civil Procedure of the State of California,'' the legislature did no more than it has done in making similar declaration as to the large number of other things by the eighteen subdivisions of said section 1238. By this section, subdivision 3, canals for conducting or distributing water for various purposes, among them, distributing water for the use of towns,

counties and "the inhabitants thereof," are declared to be public uses, and it was held in *San Joaquin etc. Irr. Co.* v. *Stevinson*, 164 Cal. 221, [128 Pac. 924], "not only that property may be condemned for canals and conduits mentioned, but that "water may be condemned and taken for public use by any person or corporation proposing to apply it 'to the use of the inhabitants of any county.' " Unless the act of 1911 introduces a new rule, there would seem to be ample authority under section 1238 both for taking water for irrigation and for rights of way for ditches or canals to conduct such water. Respondent finds an argument in this fact in favor of its construction of the act of 1911, for the reason, as is contended, that "this being the settled law at the time the statute was enacted, we must presume that the legislature knew the law as it existed, and sought to make some change therein by statutory innovation. We are to understand, then, that the legislature intended to change the rule"; citing *Reed* v. *Goldneck*, 112 Mo. App. 310, [86 S. W. 1104]. We cannot agree with respondent that "a study of the statute will show that the legislature intended to make a change in the existing law." If we may give any effect to the proviso to section 1 and to section 2, it seems to us such effect tends to refute respondent's construction of the statute, for section 2 expressly declares that the act is not to "be construed to alter or change the law of the state of California as to the duty of any person, firm, or corporation in charge of a public use to furnish water." But apart from the proviso and section 2, we think the meaning of the provisions of section 1 immediately preceding the proviso is very plain, and are susceptible of but one construction, and that is, that irrigation is declared to be a public use in the sense that those terms have heretofore been employed, and that the power of eminent domain may be exercised on behalf of such public use in accordance with the code provisions relating to the subject of eminent domain. The statute nowhere intimates that irrigation as a public use possesses or is given any quality different from any other public use, or that property may be taken for irrigation for the private use of the taker. We do not think because the legislature chose to make the declaration by a general statute rather than by an amendment to section 1238, that

we are authorized for that reason alone to attribute an intention to the legislature to give an entirely new meaning to the terms "public use." It is not unusual for the legislature to pass independent acts where the object could be, and more properly should be, accomplished by code amendments. Irrigation is not of such state-wide necessity and importance as to make it probable that the legislature contemplated in its behalf so radical a change in the general policy of the law of eminent domain. There are large portions of the state along the coast where the humidity is so great as to make irrigation wholly unnecessary; there are other extensive portions of the state where excellent crops are produced by the natural rainfall, as is well known; still other regions are arid and irrigation is necessary to the production of crops. It seems to us that if the legislature had intended, in declaring irrigation to be a public use, that eminent domain may be exercised in its behalf, "whether," as respondent contends, "the irrigation be by the public generally or by an individual for his own private use," such an intention would have been clearly stated. In the absence of any such clearly shown intention, we prefer to believe that the legislature intended that the terms "public use" should be given the same meaning as has been given them as found in the constitution and statutes for over fifty years.

It is obvious that the question hinges on the meaning of the terms "public use." To sustain respondent's contention and to find support for the judgment, we must hold that these terms mean "public advantage" and not "use by the public"; our courts of review must about face and join with those courts that have held the terms to mean anything which tends to enlarge the resources, increase the industrial energies, and promote the production power of any considerable number of inhabitants of a section of the state, or which tends to the growth of towns and the creation of new resources for the employment of capital and labor, or contributes to the general welfare. In the absence of unequivocal statutory direction, we are unwilling to sanction a construction of the terms "public use," found in the act of 1911, which would be so radical a departure from the construction uniformly given them where elsewhere found in the constitution and laws of the state.

Appellant contends that if the act of 1911 is susceptible of the construction given it by respondent, the act is in violation of section 14, article I, of the constitution, which provides that "private property shall not be taken or damaged for public use," etc. The view we entertain of the act makes it unnecessary to consider the question of its constitutionality.

The judgment is reversed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 20, 1918, and the following opinion then rendered thereon:

THE COURT.—In the petition for a hearing in this court, after decision by the district court of appeal of the third appellate district, special complaint is made of that portion of the opinion which reads as follows:

"Irrigation is not of such state-wide necessity and importance as to make it probable that the legislature contemplated in its behalf so radical a change in the general policy of the law of eminent domain. There are large portions of the state along the coast where the humidity is so great as to make irrigation wholly unnecessary; there are other extensive portions of the state where excellent crops are produced by the natural rainfall, as is well known; still other regions are arid and irrigation is necessary to the production of crops."

This portion of the opinion is not in any way essential to the decision, and in denying the application for a hearing in this court we deem it proper to say that we express no opinion thereon.

The application for a hearing in this court is denied.