[Sac. No. 3401. In Bank.—September 12, 1923.]

GRAVELLY FORD CANAL COMPANY (a Corporation), Respondent, *v.* POPE & TALBOT LAND COMPANY (a Corporation), Appellant.

[1] Rights of Way—Canals—Parol License — Estoppel.—Where a land owner was negotiating with a canal company over a long period, looking to the granting by the former to the latter of a right of way for the construction of a canal across its land, the only matter in dispute being the amount of compensation to be paid, and the former knew, for some time before it made any objection, of construction work on the canal by the canal company on the land owner's land, and by its friendly attitude induced the canal company to proceed at great expense, it impliedly licensed the construction of the canal, and the expenditures of money having been made in reliance upon the license, the land owner was estopped to revoke it and was limited to its remedy at law for damages.

APPEAL from a judgment of the Superior Court of Madera County. E. N. Rector, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. S. Dorsey and W. E. Cashman for Appellant.

Edward F. Treadwell and R. S. Laughlin for Respondent.

LENNON, J.—Plaintiff is an incorporated water company. All of its shares of stock are owned by Miller & Lux, Inc. The latter corporation is the owner of two large tracts of land, situated between the San Joaquin River and the Fresno River, in the county of Madera, state of California. Defendant is the owner of a large tract of land situated between the two tracts of land owned by Miller & Lux, Inc. On April 8, 1911, Miller & Lux, Inc., made a survey of the lines for a canal from the San Joaquin River to the Fresno River to irrigate some seventeen thousand acres of Miller & Lux land included within the said two tracts of land which were theretofore unirrigated. Three sections of the land of the defendant, Pope & Talbot Land Company, 9, 21, and 22, were situated about midway between the termini of the proposed canal so that in surveying the line of the canal it was found unavoidably necessary to cross the three sections of land owned by the defendant. Two of these sections, as well as other lands, were at that time in the possession of Miller & Lux, Inc., as lessee. The work of constructing the canal was commenced in March, 1912, and was started simultaneously at both ends of the canal and progressed toward the defendant's lands. On May 10, 1912, the work reached defendant's lands. At the time of the commencement of the work the relations between the two corporations were friendly and when J. Leroy Nickel, president of Miller & Lux, Inc., took up with Mr. Talbot, president of the defendant company, the question of the compensation to be made by the plaintiff for the land necessary to be taken to construct the canal across defendant's lands, no opposition was offered or suggested by the defendant to the construction of the canal. The negotiations were opened by a letter from Mr. Nickel to Mr. Talbot on March 29, 1912. Letters were written in regard to the furnishing of blueprints by plaintiff and defendant asked for a definite pro-

posal as to what plaintiff would concede for the right of way. In his reply letter of May 13, 1912, Mr. Nickel stated that plaintiff desired to purchase outright the strip of land of the specified width necessary for the canal and stated that it would be impossible for the plaintiff to consider the granting to the defendant of any water rights in the canal since that would give to the canal the character of a public service corporation. He suggested, as an alternative proposition to the outright purchase of the strip of land, that the defendant should join with the plaintiff in the construction of the canal, and that the cost of construction and future maintenance be borne, *pro rata,* by each corporation according to the quantity of land owned by each corporation subject to the flow of the canal and susceptible to irrigation. Defendant did not accept this offer. It was then suggested that an exchange of land be made upon a basis of equivalent acreage with adjustment for any difference in the value of the land. If this were done the holdings of defendant would be consolidated and plaintiff would acquire the ownership of the sections over which the canal was to be constructed. To this offer defendant replied in a letter of October 8, 1912, expressing a willingness to exchange ten and a fraction acres of land for fifteen acres of land owned by the plaintiff. The plaintiff refused to discuss an unequal exchange of land, based upon a supposed increase in the value of the land by reason of the construction of the canal, upon the ground that although the land exchanged by the defendant would be capable of irrigation, nevertheless the increase in the value of the land was caused by the plaintiff's efforts in the creation and construction of the canal and, furthermore, it was insisted that no exchange but an equal one be made because it was apparent there would not be enough water carried in the canal to supply all of the lands of Miller & Lux, Inc., which were situated contiguous to the canal and that, therefore, any claimed increase in the value of the land would be more apparent than real. The negotiations came to a deadlock and remained so for some four years. During all this time plaintiff was proceeding with the construction work on its own lands. Two ditches, thirty inches deep and thirty feet in width, had been excavated the entire length of the canal, including that portion across the defendant's land. A core of earth was left on defendant's lands to be subse-

quently removed but no further work was done on defendant's lands until 1916.

In October, 1916, no agreement had been reached and when plaintiff entered upon defendant's land to continue the construction work of the canal the defendant protested against any work being done until an agreement had been reached. Several times defendant protested and on November 29, 1916, advised the plaintiff that defendant's superintendent had been advised to ''prevent any further construction work on our lands, and to resist any such effort to the fullest extent.'' Plaintiff, thereupon, brought an action to condemn the right of way across the defendant's land under a statute of 1911 which provided for the condemnation of land for the construction of canals and irrigation projects. (Stats. 1911, p. 1407.) Plaintiff did not rely alone upon the right to condemn, but at the same time instituted the present action to enjoin the interference by the defendant with the construction of a canal across defendant's lands. Defendant filed a cross-complaint to this action seeking to enjoin plaintiff from further proceeding with the construction of the canal.

Upon a trial of the condemnation suit the judgment of the lower court was for the plaintiff and the work on the canal progressed to completion. Upon appeal the judgment, however, was reversed upon the ground that the use for which the condemnation was sought was not a public use and that, therefore, the statute authorizing a condemnation for such use was unconstitutional. (*Gravelly Ford Co.* v. *Pope & Talbot Land Co.*, 36 Cal. App. 556 [178 Pac. 150].) In the meantime this action had been tried in the lower court and judgment rendered and entered for the defendant upon its cross-complaint enjoining the plaintiff from proceeding with the construction of the canal across defendant's lands. An appeal from this judgment was taken to the supreme court by the plaintiff, which appeal was transferred to the district court of appeal. The district court of appeal reversed the judgment of the trial court enjoining the plaintiff from proceeding with its work of construction and held that the defendant was limited to a right to recover damages. The basis of the appellate court's decision was that the testimony showed, without substantial conflict, that the plaintiff was entitled to construct said canal across the lands of the defendant by virtue of a parol license given to the plaintiff

which defendant was estopped from revoking because of the fact that plaintiff in reliance upon it had made large and extensive improvements. (*Gravelly Ford Co.* v. *Pope & Talbot Land Co.,* 36 Cal. App. 717 [178 Pac. 155].) A rehearing was denied by the supreme court. The case having gone back to the lower court for a new trial, judgment upon the second trial went for the plaintiff. From this judgment defendant appeals.

It is plaintiff's contention that the defendant's rights in the premises are limited merely to a recovery of damages for the detriment caused by the construction of the canal and that the defendant is not entitled, under all the circumstances of the instant case, to injunctive relief prohibiting the use by the plaintiff of the canal in controversy. This contention is based primarily upon a claimed tacit consent given by the defendant to the construction of the canal by the plaintiff. This tacit consent, it is insisted, is evidenced by the fact of defendant's acquiescence without objection in the construction work of the canal and upon this claimed consent plaintiff relied and now insists that it had a right to rely. It is insisted that the claimed acquiescence of the defendant was accentuated by reason of the friendly relationship existing between plaintiff and defendant during the entire period during which the negotiations concerning the construction of the canal were under way.

[1] This contention is, of course, supported by the opinion of the district court of appeal, rendered in the first instance, the gist of which is, in effect, that because the defendant knew of the work of construction of the canal by the plaintiff on the defendant's land during the year 1912, and subsequent years until 1916, and by its friendly attitude induced plaintiff to proceed with its construction work, the defendant impliedly licensed the construction of the canal and that expenditures of money having been made by the plaintiff in reliance upon the license, the defendant was estopped to revoke it and was limited to its remedy at law for damages.

It is insisted by defendant that the statement of facts by the district court of appeal upon which the opinion of that court was predicated, and likewise the facts which the trial court in this action must necessarily have found to be true in order to have rendered judgment for the plaintiff, are neither warranted nor supported by the record now before

us.  It is insisted that the record shows facts to the contrary and that, therefore, the judgment in the instant case should not and cannot be sustained.

Defendant insists that the record shows without conflict that the defendant had no knowledge of plaintiff's entry upon its lands and could not, therefore, acquiesce in the entry. This is in a sense true.  The record before us does show that the preliminary survey was made of the canal before the defendant was informed of the proposed construction of the canal and also that the workmen under the direction of a Mr. Ogle, superintendent for Miller & Lux, Inc., in whose charge Mr. Nickel had placed the construction work of this canal, had entered upon the land of the defendant prior to the letter of May 13, 1912, wherein Mr. Nickel wrote Mr. Talbot that the men and teams were about to enter upon the land of defendant and that he was desirous of an early understanding.  But the work continued during May and June and there is the testimony of both Mr. Talbot and Mr. Harms, officers of the defendant company, that they were informed by Mr. Straube, their superintendent, of the work the latter part of May or the early part of June.  There is also the testimony of Mr. Hopkins, workman for Miller & Lux, who testified that he started work on the land May 10, 1912, and that Mr. Straube saw him at work and told him that he was upon defendant's lands.  Furthermore, there is the testimony of both Mr. Talbot and Mr. Harms that "shortly after the receipt of the letter of May 13, 1923, they objected to Mr. Nickel about the men going on the land." This certainly indicated a knowledge on their part that the men had entered.  And they also testified that immediately upon the receipt of that letter they sought legal advice as to whether plaintiff could secure the right of way by condemnation and was informed by their counsel that plaintiff could not.  It is also conceded that the defendant company had, early in the negotiations, been informed of the proposed route of the canal and had been supplied with a blue-print showing the proposed route over the defendant's lands. Therefore, while it may have been that the defendant was not aware of the entry by plaintiff on defendant's lands at its initial moment, there can be no doubt but that the defendant became cognizant of the fact very shortly thereafter and yet remained silent and made no objection to the progress of the work.  With knowledge that plaintiff was

proceeding with the construction, defendant entered into negotiations looking solely toward the compensation to be made by plaintiff for the privilege of constructing the canal across the defendant's lands. And although the defendant had been advised that the plaintiff could not secure a right of way by condemnation and was, therefore, aware of the fact that if upon a failure of the negotiations the defendant should refuse to sell the right of way, the plaintiff would have expended large sums of money without compensation, the defendant remained silent and by its friendly attitude induced the plaintiff to continue its expenditures.

We cannot agree with the defendant's contention that the entry upon the land of the defendant and the work done by the employees thereon was done without instructions from the plaintiff and without authority from plaintiff and that this fact proves conclusively no reliance was placed upon the claimed tacit consent of the defendant. While it is true that on May 13, 1912, three days after the workmen had begun work on the defendant's lands, Mr. Nickel wrote to Mr. Talbot that the construction work ''would soon be up to'' his land, nevertheless, it is uncontradicted that Mr. Nickel had given a blue-print of the proposed route of the canal to Mr. Ogle, the superintendent of construction, with general instructions to excavate the canal its entire length from river to river. It was not necessary that specific instructions be given by Mr. Nickel to make entry upon the defendant's land. This was necessarily included in the general instructions.

Defendant insists that the permission to build was merely accessory to the negotiations and was dependent upon the consummation of a complete agreement, but conceded that if plaintiff had reason to believe the question of compensation was the only question between plaintiff and defendant and that the belief was induced by defendant's acts or omission, defendant would be estopped to deny plaintiff's right to build and use the canal. This is just what the record before us does show. During the entire course of negotiations by correspondence, covering, as it did, a period of four years, only the question of compensation was discussed. In the first letter the defendant evinced a desire to share in the benefit of the water, but when the plaintiff offered to permit the defendant to come in by sharing the expense, defendant did not accept but did express a willingness to accept an

exchange of acreage. While an exchange of acreage is not the exact equivalent of a money payment, the willingness to accept that method of payment conclusively shows that the defendant was not insisting upon water rights in exchange for the permission to build. Furthermore, defendant stated in a letter to plaintiff, which we think is on its face susceptible of the construction that money compensation was referred to, "we shall expect *something* in exchange for this right of way which shall be commensurate with the value of the privilege you are seeking." From these circumstances it is readily deducible that the only question between the plaintiff and the defendant was the question of compensation. This being so, it is of no consequence that negotiations were pending, nor can it be said that plaintiff was required to be on its guard against the failing of the negotiations, for the only question being that of compensation and the plaintiff having been assured by the defendant that an amicable agreement would be reached, had a right to rely upon such assurance and to continue the work. In other words, the mere fact that negotiations were pending is not necessarily conclusive that no license to build the canal was given by the defendant. If it was understood between the parties that the permission to build was dependent upon the consummation of an agreement, then, of course, the party building on the other's land, would proceed at the risk of an agreement not being consummated. In the instant case, however, it is fairly deducible from the conduct of the parties that the permission to build was not one of the terms of the agreement, accessory and ancillary to the negotiations, and, therefore, dependent upon the consummation of a contract. On the contrary, it is evident that neither party doubted during the negotiations that the plaintiff's right was an existing right at that time and would be continuous.

Defendant earnestly insists that there was no silent acquiescence by defendant, as is claimed by the plaintiff, but that, on the contrary, the defendant through Mr. Talbot expressly warned the plaintiff not to proceed with its work but to discontinue it until a settlement was reached. Upon the second trial testimony, not present at the first trial, was introduced by the defendant upon this particular phase of the case. This was the testimony of Mr. Talbot stating that during the course of the negotiations he had told Mr. Nickel that the construction work on the defendant's land must cease until

an agreement had been reached and that Mr. Nickel had assented to this demand and had promised to withdraw his workmen. This testimony of Mr. Talbot is corroborated by Mr. Harms, treasurer of the defendant company. Mr. Nickel had testified in behalf of the plaintiff that no objections were made by the defendant until 1916, and upon cross-examination stated that he had no recollection of any such interview and no remembrance of ever having given such promise. There is, therefore, obviously a substantial conflict in the evidence. And although the testimony of Mr. Nickel is not so emphatic as that of Mr. Talbot it was in our opinion sufficient to support plaintiff's contention that there was an acquiescence by defendant in the continuance of the building of the canal by the plaintiff.

The defendant further claims that practically no work was done on the defendant's land but that all of it was done on plaintiff's own lands and that the expenditure of money, alleged by plaintiff to have been made, and found by the court to be sufficient to prevent a revocation of a parol license, was in fact expended upon the land of plaintiff itself and not upon the land of the defendant. The defendant also alleges that the value of the work on plaintiff's land was not dependent upon the completion of the work on the defendant's land but that the plaintiff had been able and would be able to irrigate a large tract of land south of defendant's land irrespective of whether it continued to have the use of the canal across the defendant's lands. This contention cannot be seriously maintained for there is in the record ample testimony that work was done on the defendant's lands by plaintiff in 1912, and that two ditches approximately thirty inches in depth and thirty feet in width were excavated the entire length of the canal and there is direct testimony to the effect that three thousand dollars had been spent on this particular work in 1912. It is true that plaintiff is able to irrigate its land south of defendant's land irrespective of whether or not it has the use of the canal across defendant's lands, but the plaintiff's lands north of defendant's canal is dependent upon the use of the canal as a whole and upon this land much money has been expended.

It will thus be seen that there is in the record evidence to support each of the separate facts upon which plaintiff relied to evidence an irrevocable parol license. We have, of course,

in our discussion of the evidence, taken as true the testimony in favor of the plaintiff and resolved all doubts in its favor, but the rule that the evidence upon appeal is to be taken in the light most favorable to the prevailing party is so elementary and has been so often cited as to scarcely need reiteration here.

The judgment appealed from is affirmed.

Seawell, J., Myers, J., Waste, J., Kerrigan, J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred.