[Crim. No. 220.   Second Appellate District.—May 16, 1912.]

THE PEOPLE, Appellant, v. EDWIN T. EARL, Respondent.

CRIMINAL LAW—DISCLOSING CONTENTS OF TELEGRAPHIC MESSAGE—INSUFFICIENT INDICTMENT—DEMURRER PROPERLY SUSTAINED.—An indictment assuming to charge the defendant, under section 619 of the Penal Code, with willfully, unlawfully and feloniously publishing and disclosing the contents of a telegraphic message in defendant's newspaper, without the permission of the addressee, or the order of a court, which does not set forth how or in what manner defendant obtained knowledge of the contents of the telegraphic message, nor that he was connected in any way with the transmitting company, nor that he had any duty to perform with respect to the transmission of the message, fails to show a public offense, and a demurrer thereto was properly sustained.

ID.—CONSTRUCTION OF CRIMINAL STATUTES—PROVINCE OF COURTS.—In construing criminal statutes, the courts are not bound to give literal effect to every word and phrase appearing by the letter of the law; but reason must have its just proportion, and the intent of the lawmakers is to be ascertained by taking into account the history of the legislation upon the subject treated, and concurrent legislation affecting the same or closely kindred subjects. The fact that the enforcement of a statute, according to its literal import, will have the effect of prohibiting otherwise necessary and useful acts may furnish reason to conclude that the intent of its framers was not that it should so operate. General terms should be so limited in their application as not to lead to injustice, or oppression, or an absurd consequence.

ID.—INTENT OF CODE PROVISION—SECRECY IN TRANSMISSION OF MESSAGE. Section 619 of the Penal Code, construed in connection with sections

620 and 621 thereof relative to the same subject, is manifestly intended to preserve secrecy as to telegraph messages only among all those who have a duty to perform with respect to the dispatch, transmission or delivery thereof. Any other interpretation of that section would cause it to embrace every person who might obtain knowledge of its contents, however learned, or through however so many persons, and to include the sender of the message and persons informed by him of its contents, which would be to give the section an unreasonable and absurd meaning.

ID.—RULE AS TO PLEADING CRIMINAL STATUTES—EXCEPTIONS—PARTICULAR CIRCUMSTANCES CONSTITUTING OFFENSE ESSENTIAL.—While, as a general rule, it is sufficient to charge an offense in the language of the statute, yet there are recognized exceptions thereto. If the statute does not express fully the facts necessary to constitute a complete offense, it will not be sufficient to charge it in the terms of the statute; but, in such case, the particular circumstances of the offense necessary to constitute a complete offense must be averred, and a failure to do so will vitiate the information or indictment.

APPEAL from a judgment of the Superior Court of Los Angeles County entered on a demurrer to an indictment. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney General, George Beebe, Deputy Attorney General, J. D. Fredericks, District Attorney, and G. Ray Horton and Arthur Keetch, Deputy District Attorneys, for Appellant.

T. E. Gibbon, Anderson & Anderson, Edwin A. Meserve, and Shirley C. Ward, for Respondent.

JAMES, J.—This is an appeal taken by the people from a judgment entered for defendant on a demurrer to an indictment.

Defendant was indicted under the provisions of section 619 of the Penal Code, which provides as follows: "Every person who willfully discloses the contents of a telegraphic or telephonic message, or any part thereof, addressed to another person, without the permission of such person, unless directed so to do by the lawful order of a court, is punishable by imprisonment in the state prison not exceeding five years, or in the county jail not exceeding one year, or by fine not ex-

ceeding five thousand dollars, or by both fine and imprisonment.''

The indictment charged that on the thirty-first day of July, 1911, in the county of Los Angeles, a telegraphic message was transmitted by the United Wireless Telegraph Company by means of its telegraphic apparatus to one F. F. Peard, from the city of Los Angeles, at Avalon, Catalina Island, which said telegram was signed by one Fenner H. Webb. The indictment then proceeds to charge as follows: ''That the said Edwin T. Earl did then and there willfully, unlawfully and feloniously print, publish and cause to be printed and published the contents of said message in a certain newspaper, to wit: The 'Los Angeles Tribune,' and which said newspaper was then and there printed, published, circulated and distributed in said county to one D. J. Johnson and to the subscribers of said newspaper and to divers other persons (too numerous to mention and to the grand jury unknown and for that reason not herein specifically named), and that he, the said Edwin T. Earl, did then and there and thereby willfully, unlawfully and feloniously disclose the contents of said telegraphic message to the said D. J. Johnson and to the subscribers of said newspaper and to divers other persons (too numerous to mention and to the grand jury unknown and for that reason not herein specifically named), without first having obtained the permission of said F. F. Peard, sometimes called and known as F. S. Peard, so to do, and without having first been directed so to do by the lawful order of a court.'' The indictment did not set forth how or in what manner defendant obtained knowledge of the contents of the telegraphic message, nor that he was connected in any way with the transmitting company, or that he had any duty to perform with respect to the transmission of the message. In the demurrer of defendant interposed to the indictment, the ground was assigned that sufficient facts were not charged to show that a public offense had been committed. In reviewing the ruling of the trial judge upon that question it becomes necessary to examine the provisions of the section quoted and to determine whether under the facts alleged the defendant is made to appear to be such a person as is punishable as therein declared. The function of the courts in construing statutes is not constricted to a view which shall give literal effect to

every word and phrase appearing by the letter of the law. In that analysis reason must have its just proportion, and the intent of the law-makers is to be ascertained by taking into account several considerations, as: the history of the legislation upon the subject treated of, and concurrent legislation affecting the same or closely kindred subjects. The fact that the enforcement of a statute according to its literal import will have the effect of prohibiting otherwise necessary and useful acts may also furnish an entirely sufficient reason for concluding that the intent of its framers was not that it should so operate. Our supreme court, in *Ex parte Lorenzen,* 128 Cal. 431, [79 Am. St. Rep. 47, 50 L. R. A. 55, 61 Pac. 68], has declared the rule thus: "But for the more substantial objection that the ordinance by its terms would oppress and lead to the conviction of persons guilty of no fraudulent act, it is to be remembered that the letter of a penal statute is not of controlling force, and that the courts, in construing such statutes, from very ancient times have sought for the essence and spirit of the law and decided in accordance with them, even against express language; and in so doing they have not found it necessary to overthrow the law, but have made it applicable to the class of persons or the kind of acts clearly contemplated within its scope." As an illustration, the old Bologna law, which provided in literal terms for the punishment of a person who should let blood in the streets and which was held not to apply to a barber performing the office of a surgeon, is given, among others. This expression of Mr. Justice Field, used in *United States* v. *Kirby,* 7 Wall. 482, [19 L. Ed. 278], is also quoted: "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice or oppression or an absurd consequence. It will always be presumed that the legislature intended exceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter." With this preface we may proceed to examine the statute before us. Section 619 of the Penal Code, which we have quoted, is followed by two sections which deal with the same subject and which provide as follows:

"Sec. 620. Every person who willfully alters the purport, effect, or meaning of a telegraphic or telephonic message to

the injury of another, is punishable as provided in the preceding section.''

''Sec. 621.   Every person not connected with any telegraph or telephone office who, without the authority or consent of the person to whom the same may be directed, willfully opens any sealed  envelope  inclosing  a  telegraphic  or  telephonic message, addressed to another person, with the purpose of learning the contents of such message, or who fraudulently represents another person and thereby procures to be delivered to himself any telegraphic or telephonic message addressed to such other person, with the intent to use, destroy, or detain the same from the person entitled to receive such message, is punishable as provided in section six hundred and nineteen.''

It will be noted that by section 621 it is expressly provided that ''every person not connected with any telegraph or telephone company'' who, without authority in the way and for the purpose described, opens a telephonic or telegraphic message, is made punishable.   It may be noted also that by this last section it is not made a crime for such a person to divulge the contents of a message so unlawfully opened; his offense consists in opening for the purpose of learning the contents of a telephonic or telegraphic message.   If section 619 is to be given the effect which its language literally imports, then the sender of the message who discloses its contents, either before or after sending, and every person to whom he so discloses it, might in turn be guilty and subject to punishment by fine or imprisonment, or both.   Taking the three sections to which we have referred alone, and considering the sense of the expressions used by the legislature there in context, it appears very clear to us that the intent was, by the enactment of section 619, to preserve secrecy as to telegraphic messages only among all those who have a duty to perform with respect to the dispatch, transmission or delivery thereof.   Any other interpretation placed upon the provisions of that section would cause it to embrace every person who might obtain knowledge of the contents of any message, no matter how such contents might have been learned, or through however so many persons such information may have been communicated, as well as to include the sender of the message and the persons whom he might have informed of its contents.   To so hold, in our

opinion, would be to give to the statute an unreasonable and absurd meaning. The history of the legislation upon the subject, as well as other sections of the code, which we need not further refer to, support the view we have taken in our construction of the statute.

Having reached the conclusion just expressed, we have then to examine the indictment to ascertain whether sufficient is there stated to constitute a good charge against the defendant. On this proposition it is urged on behalf of appellant that the charge is framed in the language of the statute, and that such form of pleading is sufficient under our practice. It is true that there are many decisions holding that a pleading in the language of the statute will be treated as a sufficient statement of the offense intended to be charged, but it is also true that to this holding there are exceptions. If the statute does not express fully the facts necessary to constitute a complete offense, then and in that case it will not be sufficient to frame the charge in the terms of the statute. We quote, as pertinent to this point, from *People* v. *Ammerman,* 118 Cal. 23, [50 Pac. 15], where the writer of the decision says: "I do not understand that our court intends to hold that where a fact must be stated in an information in order to charge an offense, it may be omitted from the information where the statute is silent as to that fact." We quote again from *People* v. *Eppinger,* 105 Cal. 36, [38 Pac. 538] : "An indictment or information must contain matter which shows on its face that a crime has been committed by the accused. If the matters charged in the indictment or information are as consistent with the innocence of the accused as with his guilt, the presumption of his innocence will overcome the accusation of guilt and the accused is not to be subjected to a trial of the charge." Again, it is said in *People* v. *Neil,* 91 Cal. 465, [27 Pac. 760] : "The information, as we have before stated, charges the offense in the language of the code, and it is well settled under our system of pleading in criminal cases that this will generally be held to be sufficient; but where the particular circumstances of the offense are necessary to constitute a complete offense, they should be stated and averred, and a failure to do so will vitiate the information or indictment." (See, also, *People* v. *McKenna,* 81 Cal. 158, [22 Pac. 488] ; *People* v. *Terrill,* 127 Cal. 99, [59 Pac. 836] ; *People* v. *Perales,*

141 Cal. 581, [75 Pac. 170].)   In our opinion, the demurrer to the indictment in this case was properly sustained.

Some attention is given in the briefs to the subject of wireless telegraphy and the question is argued as to whether any of the statutes found in the Penal Code touching the matter of transmission of telegraphic or telephonic messages are applicable to the operation of the wireless telegraph.   We do not think that that question is properly in this case at all. It is not disclosed by the indictment that the message was a wireless message, and we are not of opinion that judicial notice can be taken of the fact, if it be a fact, that the only method of telegraphic communication between Catalina Island and the mainland is that afforded by the wireless system. The mere allegation that the message was transmitted by the United Wireless Telegraph Company is not a statement of the means of transmission.   For aught that appears, this company may have used or employed other than a wireless system as the means of transmission.   While we are of the opinion that those statutes apply to every method of telegraphic communication, any extended discussion upon that subject, for the reason we have stated, would constitute *dicta* merely.

The judgment is affirmed.

Allen, P. J., and Shaw, J., concurred.