[S. F. No. 14847. In Bank.—July 29, 1933.]

JOSEPHINE ROBBIANO et al., Respondents, v. LOUIS A. BOVET, Jr., Appellant.

LOUIS A. BOVET, Jr., Appellant, v. JOHN RAGNO et al., Respondents.

JOHN RAGNO, as Administrator, etc., Respondent, v. LOUIS A. BOVET, Jr., Appellant.

MABEL MORGAN, Appellant, v. JOHN RAGNO et al., Respondents.

John Ralph Wilson, Aylett R. Cotton, Bianchi & Hyman and Hugh K. McKevitt for Appellants.

Clifton Hildebrand, Crosby & Crosby and Donahue, Hynes & Hamlin for Respondents.

CURTIS, J.—These are appeals from judgments in personal injury cases. All of the appeals arose out of litiga-

tion involving the same accident. The actions were consolidated for trial and the appellants have brought up the judgment-roll and a bill of exceptions.

The accident occurred on the San Mateo-Hayward bridge about 6:25 P. M. on the evening of November 13, 1930. The bridge runs in a general easterly and westerly direction and has a railing four or five feet high on each side. It is 27 feet wide and is divided into three lanes of equal width, the lines being indicated by six-inch markers. The bridge was lighted at the time of the accident with lights 210 feet apart staggered on opposite sides of the bridge. At the time of the accident a car occupied by the Joos family headed east was stalled in the southerly traffic lane. Although it was dark the car was seen by the witnesses at a considerable distance. We will discuss this point in the case later in this opinion.

On the evening of the accident, Sylvester Robbiano and his brother-in-law, John Ragno, had been visiting in Redwood City and were returning to their homes in Oakland. Each had his separate car. Robbiano was driving a Buick; Ragno was driving a Nash. As they proceeded easterly across the bridge, Ragno was in front and Robbiano was following. They were in the south lane and were traveling at a speed variously estimated at from 35 to 40 miles an hour. As they approached the Joos car Ragno turned out into the middle lane, passed the parked car, and then returned to the south lane. Robbiano turned out to pass the Joos car and as he did so another car was approaching from the east. The latter car was occupied by the defendant Louis A. Bovet and Miss Mabel Morgan. They were traveling 35 to 40 miles per hour in a Ford car. A head-on collision occurred between the Buick and the Ford cars. Whether the collision took place in the middle lane or the north lane, and the exact distance of the point of collision from the Joos car, were controverted facts. The collision was so violent that Robbiano suffered injuries from which he died. His widow and children commenced an action against Bovet. The latter answered and filed a cross-complaint against John Ragno as administrator of the estate of Robbiano and against John Ragno and Josephine Robbiano personally. John Ragno as administrator of the estate of Sylvester Robbiano filed a cross-complaint against the

defendant. Mabel Morgan commenced a separate action against John Ragno and Josephine Robbiano. As above stated, the actions were consolidated for the purposes of the trial. The jury returned a verdict against the defendant Bovet. It also returned a verdict against Bovet and in favor of John Ragno as administrator of the estate of Sylvester Robbiano. From the judgments entered on the verdicts the defendant Bovet has appealed. He also appealed from the order made by the trial court granting a nonsuit against him on his cross-complaint. But the latter appeal he abandoned in his opening brief. The trial court granted a nonsuit against Mabel Morgan in favor of Josephine Robbiano. It directed a verdict in favor of Ragno as against Mabel Morgan and from the judgment entered thereon she has appealed.

### Robbiano v. Bovet.

We will first consider the case brought by the widow and children of Robbiano against Bovet. The validity of the judgment in favor of the plaintiffs in this action depends upon two propositions: First, the negligence of Bovet and, secondly, if Bovet was negligent, the freedom of negligence on the part of Robbiano. It is not seriously contended that Bovet was not negligent, as there is direct evidence that at the time of the collision he was driving his car without lights over one hour and a half after sunset, and was also driving in the middle lane of the bridge, the lane to his right being free of traffic. The question of Bovet's negligence must be held to have been conclusively established. As to the claim that Robbiano was negligent, we have seen that the verdict of the jury was to the effect that he was not. The sole question, therefore, for us to decide is whether the evidence in the case shows that Robbiano was guilty of contributory negligence as a matter of law. In the first place, in support of his contention that Robbiano was guilty of contributory negligence, the appellant claims that the evidence shows without any contradiction that Robbiano, had he exercised due care when he turned out of the right lane into the middle lane in order to pass around the stalled Joos car, could have seen the Bovet car even though it was traveling without lights. Appellant relies upon the testimony of Ragno and Lyons, two of respondents' witnesses, to substantiate this claim. Ragno

testified that he saw the Joos car when he was a block or a block and a half from it and that he turned to his left to go around it. Lyons testified that he saw the Joos car when he was a few blocks away. It seems to be agreed that when the witnesses refer to a block they have in mind a block 300 feet in length. Appellant argues that if Ragno could see the Joos car a block and a half away and Lyons could see the same car a few blocks away, that Robbiano could see the Bovet car when he (Robbiano) made the turn into the middle lane to go around the Joos car. We do not think this conclusion necessarily follows from the testimony of these two witnesses, nor from any evidence in the case. As far as Lyons being able to see the Joos car ''a few blocks away'', the evidence shows that the Joos car was facing Lyons, and that its headlights were burning. That he could see the headlights of the Joos car at the distance stated is really no evidence as to the distance an unlighted car could be seen, or whether it could be seen at any substantial distance under the conditions prevailing on the evening at the scene of the collision. Referring to the testimony of Ragno that he saw the Joos car a block and a half away, and his further testimony that he could not see its tail-light for the reason that someone was standing between Ragno and this light, it might, at first blush, be considered as strong evidence that an unlighted car under the circumstances related could be seen for at least the distance of a block and a half, and therefore that Robbiano could have seen, had he looked, the car of Bovet, which was probably in the neighborhood of a block and a half away at the time Robbiano made the turn into the middle lane. However, there is one factor which appellant has not taken into consideration in arriving at the above conclusion and that is, that the bridge was lighted at the time of the collision with lights 210 feet apart staggered on its opposite sides. The evidence does not show but that the Joos car had stopped immediately under one of these lights. If it had, then it could be seen a greater distance than if it were some distance removed from any of these lights. The conditions may have been entirely different as to the location of the Bovet car at the time Robbiano made the turn into the middle lane. For aught the evidence shows, it may at that time have been some distance from any light, and in

that case its visibility would have been much less than if it were directly under one of said lights. Under these circumstances, we think the jury were justified in inferring that Robbiano could not see the approaching Bovet car, and particularly would this be so where there was evidence before them from a number of witnesses that the night was dark. It was near the middle of November, an hour and a half after sunset. There was no evidence that the moon was shining. Taking all these facts into consideration, we are of the opinion that there was no compelling evidence before the jury that would make it their duty to hold or find that Robbiano saw the Bovet car at the time he made the turn into the middle lane or thereafter in time for him to avoid the collision.

This brings us to the main contention of the appellant and that is, conceding that Robbiano did not see, and could not by the exercise of reasonable care, have seen the Bovet car in time to avoid the accident, nevertheless Robbiano was guilty of negligence in turning into the middle lane of the bridge while the Bovet car was being driven thereon, even though it was being driven without lights and for that reason it was not visible to Robbiano. In support of this contention appellant relies upon section 122 of the California Vehicle Act, the applicable portions of which read as follows: ''The driver of a vehicle shall drive the same upon the right half of the highway and close to the right hand edge or curb of such highway . . . except when overtaking and passing other vehicles, in which event the overtaking vehicles may be driven on the left side of the highway, *if such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety;* and providing that such overtaking vehicle shall return to the right hand side of the highway before coming within one hundred feet of any vehicle approaching from the opposite direction.'' Appellant lays great stress upon that portion of this statute which we have italicized, and his contention is that Robbiano violated said section of the act by turning into the left lane when it was not clearly visible as required by said section, and when there was oncoming traffic thereon. That the violation of a statute is generally negligence as a matter of law may be conceded. But did

Robbiano actually violate any of the terms of this statute? It is the position of the appellant that he did violate said section because the middle lane was not clearly visible and further that it was not free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety. There is no evidence, nor even a reasonable inference from the evidence, that Robbiano at the time he made the turn to pass the Joos car did not have a clear vision of the highway and of all vehicles thereon within the range of his lights and that beyond that range he did not have a clear vision of the highway and all lighted vehicles thereon. The only object on the highway of which he did not have a clear vision was the unlighted car of Bovet. Did the section of the act quoted above require Robbiano to see something which, under the conditions prevailing at the time he turned into the left lane, he could not see? We hardly think anyone will contend that the legislature intended any such impossible feat.

The further contention that Robbiano violated said section of the act by turning into the lane to his left when said lane was not free of oncoming traffic seems equally tenuous. The contention that said lane was not free of oncoming traffic is based solely upon the fact that Bovet's unlighted car was being operated thereon. Evidently the legislature, when referring to "oncoming traffic" in this section, did not have in mind vehicles that were being illegally operated thereon without headlights and which for that reason were not visible to others using the highway. To adopt the construction contended for by the appellant would render the passing of machines upon the highway at night-time, no matter how slowly they be traveling, extremely hazardous if not practically impossible. No driver during the night-time would be safe in turning to his left to pass a machine in front of him for fear that there might be some unlighted machine approaching him. One of the cardinal rules to be followed in the construction of a statute is that its language must be given a reasonable interpretation and a literal interpretation should be avoided which would lead to absurd results.

"All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will

always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character." (Extract from opinion of Mr. Justice Field in *United States* v. *Kirby,* 74 U. S. (7 Wall.) 482 [19 L. Ed. 278].)

In the case of *People* v. *Ventura Refining Co.,* 204 Cal. 286 290 [268 Pac. 347, 349, 283 Pac. 60], this rule is approved in the following language: "Where the interpretation claimed leads to injustice, oppression, or to absurd consequences, the general terms used in a statute will be limited in their scope so as to avoid such a result." Continuing on page 292, the court further stated: "General terms should be so limited in their application as not to lead to an absurd consequence. (*People* v. *Earl,* 19 Cal. App. 69 [124 Pac. 887].) . . . When a statute is fairly susceptible of two constructions, one leading inevitably to mischief or absurdity, and the other consisting of sound sense and wise policy, the former should be rejected and the latter adopted. (*San Joaquin & K. R. C. & I. Co.* v. *Stevinson,* 164 Cal. 221 [128 Pac. 924].)"

"The fact that the enforcement of a statute according to its literal import will have the effect of prohibiting otherwise necessary and useful acts may also furnish an entirely sufficient reason for concluding that the intent of its framers was not that it should so operate." (*People* v. *Earl,* 19 Cal. App. 69, 72 [124 Pac. 887].)

The principle enunciated in the foregoing authorities not only justifies, but in our opinion, compels us to limit the phrase, "oncoming traffic" used in section 122 of the California Vehicle Act as referring to lighted vehicles, or those vehicles on the highway equipped with proper lights so that they are visible to others using the highway. Under this construction of the section of the act, it is clear that Robbiano was not guilty of violating the terms thereof in making the turn into the middle lane for the purpose of passing the Joos car.

■ Neither do we think he was necessarily guilty of negligence in traveling at a speed of 30 to 40 miles per hour as the evidence tends to show he was traveling at the time he turned to pass the Joos car. Not only does the statute permit such rate of speed, but it is apparent that at the time he passed the Joos car, he could see all visible objects on the highway in front of him. The only object

not within his vision was the unlighted car of Bovet. The
question of his negligence was, therefore, a question of fact
for the jury. Robbiano had the right to presume that those
using the highway in front of him were obeying the law
and were performing their duty in having their machines
properly equipped with headlights. ''The general rule is
that every person has a right to presume that every other
person will perform his duty and obey the law, and in
the absence of reasonable grounds to think otherwise, it is
not negligence to assume that he is not exposed to danger
which can come to him only from violation of law or duty
by such other person.'' (29 Cyc. 516; *Medlin* v. *Spazier*,
23 Cal. App. 242 [137 Pac. 1078]; *Harris* v. *Johnson*, 174
Cal. 55, 58 [161 Pac. 1155, Ann. Cas. 1918E, 560, L. R. A.
1917C, 477]; *Moreno* v. *Los Angeles Transfer Co.*, 44 Cal.
App. 551 [186 Pac. 800].)

Other questions were presented and discussed in the
briefs of the parties. These questions were fully considered
in the opinions rendered by the District Court of Appeal
when this cause was before that court. While the decision
of the District Court of Appeal has been set aside by the
order of transfer to this court, the discussion of those ques-
tions by the District Court of Appeal convinces us that they
were not of sufficient consequence to entitle them to any
detailed consideration by this court.

The judgment is affirmed.

### *Ragno, as Administrator, etc.,* v. *Bovet.*

This action, as we have already seen, was brought by the
plaintiff as the administrator of the estate of Robbiano, de-
ceased, to recover damages for the injury to the machine
of said decedent by reason of said collision. The decision
herein is controlled by and must follow that in the case of
*Robbiano* v. *Bovet.*

The judgment is affirmed.

The other two cases herein involved were also before the
District Court of Appeal and opinions were rendered by said
court in each of said cases. We are in complete accord
with said opinions and hereby approve and adopt them as
the opinions of this court. They are as follows:

### *Morgan* v. *Ragno.*

''The plaintiff asserts that the action of Mabel Morgan
against John Ragno was based upon the contention that

Ragno in passing the parked Joos car suddenly swerved to the left thereby causing Robbiano, driving behind him at great speed, in order to avoid hitting the Joos and Ragno cars, to swerve into the north lane and collide with the Bovet car. In her closing brief she reinforces her contention by asserting that when Ragno made the turn around the Joos car he gave no signal.

"In her complaint with much care the plaintiff alleged the positions of the different cars on the bridge immediately before the accident. She alleged that Robbiano was following Ragno three car lengths in the rear. Continuing she alleged: ' . . . and said Ragno as he was near the point of the passage of the automobile being driven by him in an easterly direction to his right of said Bovet, driving his Ford automobile in a westerly direction as aforesaid, observed another automobile parked upon said bridge partially to the right of said Ragno's automobile and partially in the path of said Ragno's automobile, as it was then being driven by Ragno, and that in order safely to attempt to pass said parked automobile, said Ragno suddenly and without warning to any person slowed the speed of his Nash automobile and swerved towards the middle of the lane of traffic upon said bridge, whereupon the said Robbiano, driving said Buick automobile, in order to pass at an excessive speed between said Bovet's automobile and the said Ragno's automobile, swung the said Buick automobile to said Robbiano's left of said Ragno's automobile in a careless and negligent manner and in so doing ran into and collided with said Bovet's Ford automobile proceeding westerly on said bridge and on said Bovet's right-hand side of said bridge as above set forth.' Those allegations were denied in the defendants' answer. On the trial no witness testified that at any time Robbiano overtook and attempted to pass Ragno. The witnesses testified without conflict that Ragno was at all times ahead and Bovet testified the Ragno car at no time interfered with him. No witness testified Ragno slowed down his car until after the accident. No witness testified the accident occurred when the Ragno car, the Bovet car and Robbiano's car were at the same instant attempting to pass each other and to pass the Joos car. The witnesses Morgan, Bovet and Lyons each testified they saw the Ragno and

the Robbiano cars when they were as much as three quarters of a mile away. No witness testified that Ragno did not give a signal before attempting to pass the Joos car. Bovet testified he did not see a signal if one was given. The plaintiff called Ragno as a witness. The defendants also called him as a witness. He was examined and cross-examined, nevertheless he was not asked whether he gave a signal or did not give one. The plaintiff was called as a witness in her own behalf and testified that she was at all times looking directly ahead. The witness Lyons also testified that he was at all times looking at the movements of the Ragno car and the Robbiano car. Neither witness testified that Ragno did not give a signal.

■ "As we understand the brief of the plaintiff her reasoning is that the witness Bovet testified he did not see Ragno signal. Relying solely on that proved fact she contends that it will be inferred Ragno did not signal; that it will then be inferred Robbiano did not know Ragno was going to make the turn; that it will be inferred Robbiano did not see the Bovet car coming from the east; and therefore that Ragno caused the acts of Robbiano. In the absence of more facts legally proved that line of reasoning is not permissible. (Code Civ. Proc., sec. 1960.) ■ When the defendants made a motion for a directed verdict the record does not disclose that the plaintiff called to the attention of the trial court the theory which she now presents. In ruling on the motion the trial court remarked: 'If the case went to the jury on the present testimony and the jury found against Ragno I would be compelled on motion for a new trial to grant it as to him.' The court applied the proper rule. (*Estate of Baldwin,* 162 Cal. 471, 473 [123 Pac. 267].) We think it did not err in applying the rule to the facts before it."

The judgment is affirmed.

### *Bovet v. Ragno.*

"In this action, as stated above, the trial court ordered a nonsuit in favor of the defendant upon Bovet's cross-complaint. While the cross-complainant appealed nevertheless he admitted error in his opening brief and has not pressed the appeal."

The judgment of nonsuit should be, and therefore is, affirmed.

Thompson, J., Seawell, J., Preston, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.