[Crim. No. 1542.   Third Appellate District.—December 29, 1936.]

In the Matter of the Application of BEN DAVIS et al., for a Writ of Habeas Corpus.

A. J. Harder for Petitioners.

Otis D. Babcock, District Attorney, and J. Francis O'Shea, Deputy District Attorney, for Respondent.

PLUMMER, J.—This cause is before us upon the application of Jack Herald for a writ of *habeas corpus* in behalf of the above-named Ben Davis and Julia Leslie, wherein and whereby the discharge of said persons from the custody of Donald A. Cox, sheriff of the county of Sacramento, state of California, is sought.

The petition sets forth that the above-named Ben Davis and Julia Leslie are restrained of their liberty by Donald A. Cox, by virtue of a certain warrant of arrest issued by the justice of the peace of Georgiana township, in the county of Sacramento, based upon a complaint dated the 25th day of November, 1936, charging the above-named Ben Davis and Julia Leslie with having wilfully and unlawfully entered certain lands under cultivation in Georgiana township, county of Sacramento, state of California, occupied by J. W. Libish, contrary to the form, force and effect of the statute in such cases made and provided, and against the peace and dignity of the People of the State of California.

Thereafter, and after the issuance of the warrant of arrest, it appears that the complaint upon which the warrant was issued was amended by the justice of the peace, by the addition of the following words, after the word "Libish", to wit: "Without first having obtained written permission from the owner of such lands, or his agents, or the person in lawful possession thereof."

On the part of the petitioners it is contended that the original complaint, and likewise, the complaint as amended, fails to state a cause of action. On the part of the People, hereafter designated "respondent", it is contended that the original complaint, and also as amended, sets forth not only a cause of action, but criminal acts constituting a misdemeanor. The cause of action purports to be founded upon subdivision "J" of section 602 of the Penal Code, defining certain acts as constituting a trespass, denominated in the section as a misdemeanor.

On the part of the petitioners it is argued that subdivision "J" must be read as a whole; that in order to charge anyone with a criminal offense thereunder, the complaint must set forth the specific acts constituting the offense, and which specified acts are expressly prohibited by the section.

On the part of the respondent it is contended that the first fifteen words of subdivision "J" of section 602, *supra,* con-

stitute, in and of themselves, a complete definition of a criminal offense; that no part of the subdivision, after the word "another", down to and ending with the word "lands", is a necessary part of the criminal acts prohibited by the subdivision. The argument is to the effect that the subdivision defines two separate and specific classes of offenses.

On the part of the petitioners it is contended that this construction of the section leads to an absurdity; that if nothing after the word "another" is necessary to be set forth showing the commission of an offense, then and in that case the following words, "without having first obtained written permission from the owner of such lands", etc., are no part of, and cannot be added to the first fifteen words of the subdivision.

It would appear that if the construction of the subdivision contended for by the respondent is correct, then and in that case a farm-hand seeking employment from the owner of the premises involved, could not enter thereon without being guilty of a misdemeanor, unless he first obtained permission to make such entry and seek employment; that an automobile salesman or anyone desiring to contact the owner for the purposes of negotiating a sale, or to gain information as to directions, would likewise be guilty of a misdemeanor if he entered any premises enclosed by a fence.

The contention of the petitioners is that such a construction leads to an absurdity and could not have been within the contemplation of the legislature, and that the subdivision must be read in the light of the acts sought to be prohibited.

In the construction of a statute the first cardinal rule is to ascertain, if possible, the intent of the legislature. For this purpose we herein set forth what may be called the evolution of subdivision "J" of section 602, *supra*. At first the subdivision was known as subdivision "I", and is worded as follows: "Entering any enclosure belonging to or occupied by another for the purpose of hunting, shooting, killing or destroying any kind of game within such enclosure, without having first obtained permission from the owner of the enclosure." (Stats. 1917, p. 320.) From the foregoing language used in the subdivision it is evident that the legislature intended to prohibit shooting, hunting, etc., within an *enclosure*. It will be observed that the subject of enclosure was carried down in a subsequent amendment of the sub-

division, although different words are used, to wit: "Enclosed by a fence," which in nowise changes the meaning, or expresses a different intent of the legislature.

In 1929 the subdivision under consideration was recast (Stats. 1929, p. 1180), and was made to read: "Entering any lands belonging to, or occupied by another, where signs forbidding trespass are displayed at intervals not less than three to the mile along all exterior boundaries, and all roads and trails entering such lands for the purpose of hunting, shooting, killing or destroying any animal or bird on such lands, without having first obtained written permission from the owner of such lands, or his agent, or the person in lawful possession thereof, is guilty of a misdemeanor."

In 1931, subdivision "J" of section 602, *supra,* was amended to read as follows: "Entering any lands under cultivation or enclosed by fence belonging to, or occupied by another; or, entering upon uncultivated or unenclosed lands where signs forbidding trespass are displayed at intervals not less than three to the mile along all exterior boundaries, and at all roads and trails entering such lands, for the purpose of hunting, shooting, killing, or destroying any animal or bird on such lands, without having first obtained written permission from the owner of such lands, or his agent, or the person in lawful possession thereof, is guilty of a misdemeanor."

In subdivision "J", *supra,* as it now appears, there is a semicolon after the word "another", and it is the theory of the respondent that a complete offense is described by the words "entering any lands under cultivation, or enclosed by a fence belonging to, or occupied by another", without permission, etc., and that the legislature intended that the words just quoted should stand alone, unconnected with any of the specific acts prohibited by the language in the subdivision following the word "another". This interpretation, however, is based simply upon the use of a semicolon instead of a comma. All the authorities which have been called to our attention, and which we have discovered in our own search, are to the effect that in construing a statute and seeking to ascertain the intent of the legislature, punctuations are not controlling, and an interpretation must be given which avoids an absurdity, and which especially goes outside of the offenses sought to be prohibited.

It may be further observed that the first fifteen words of subdivision "J", *supra,* express almost a parallel idea or intent as is set forth in the language appearing in subdivision "I" of section 602 as originally adopted in 1917. For purposes of comparison we here set forth, first, the language of subdivision "J", to wit: "Entering any lands under cultivation or enclosed by fence, belonging to, or occupied by another." Subdivision "I" reads only slightly different, to wit: "Entering any enclosure belonging to, or occupied by another," for the purposes of hunting, etc. Subdivision "J" describes land enclosed by a fence, and occupied by another. Subdivision "I" describes premises enclosed and occupied by another. In subdivision "I" the prohibited purpose is set forth after the word "another", where a comma only is used. In subdivision "J" the prohibited purposes are likewise set forth, but after the word "another", a semicolon is used. The purpose, however, in both subdivisions appears perfectly plain when read in the light of the specific acts sought to be prohibited, as exhibited by the language and the punctuation used when subdivision "I" was incorporated into section 602, *supra.*

Without reading subdivision "J" as a whole, there is no prohibited purpose set forth therein, and the contention of respondent thus appears to be untenable, as it leads directly to the absurd conclusions heretofore mentioned, and it is not to be assumed that the legislature intended any such result if any reasonable construction, and we may say, just and fair construction can be given to the language under consideration. In other words, it cannot be presumed that the legislature intended by the use of a semicolon to make an act a crime, even though it leads to absurdities.

That the history of the subdivision should be considered and the evils sought to be remedied, are matters which must be considered in the interpretation of statutes. In 23 California Jurisprudence, page 734, section 113, the text reads: "We have noticed the general rule that the meaning of a statute is to be sought in the language used by the legislature. But this does not mean that the courts are always to be governed by the exact phraseology and literal meaning of every word or phrase employed. The primary rule of intention is to be first applied. And intention may be ascertained, in doubtful cases, not only by considering the words used, but

also by taking into account other matters, such as the context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, contemporaneous construction, and the like. In other words, the courts will not blindly follow the letter of a law, when its purpose is apparent, to consequences which are inconsistent with that purpose; and this would seem to be particularly true when the results of a literal interpretation, if adopted, would be absurd, and unjust, and where rights of the public are involved. Statutes should receive a sensible and reasonable, rather than a literal, construction, and the true intent and meaning of the statute, as discernible from the purpose, the spirit and reason, or the general tenor and scope of the law prevail over its letter. A thing which is within the intention is as much within the statute as if it were within the letter, and a thing within the letter is without the statute if without the intention.'' In the same volume, on page 733, section 111, we find the rule laid down in the text governing punctuations.

In the case of *Robbiano* v. *Bovet*, 218 Cal. 589 [24 Pac. (2d) 466], the Supreme Court considered the subject of punctuations and construction of statutes, which we think harmonizes with what we have set forth herein. We here quote from the opinion in that case as follows: '' 'All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character.' (Extract from opinion of Mr. Justice Fields in *United States* v. *Kirby*, 74 U. S. (7 Wall.) 482 [19 L. Ed. 278].) In the case of *People* v. *Ventura Refining Co.*, 204 Cal. 286, 290 [268 Pac. 347, 283 Pac. 60], this rule is approved in the following language: 'Where the interpretation claimed leads to injustice, oppression, or to absurd consequences, the general terms used in a statute will be limited in their scope so as to avoid such a result.' Continuing, on page 292, the court further stated: 'General terms should be so limited in their application as not to lead to an absurd consequence. (*People* v. *Earl*, 19 Cal. App. 69 [124 Pac. 887].) . . . When a statute is fairly susceptible of two constructions, one leading inevitably to mischief or absurdity and the other

consisting of sound sense and wise policy, the former should be rejected and the latter adopted. (*San Joaquin & K. R. C. & I. Co.* v. *Stevinson*, 164 Cal. 221 [128 Pac. 924].)' 'The fact that the enforcement of a statute according to its literal import will have the effect of prohibiting otherwise necessary and useful acts may also furnish an entirely sufficient reason for concluding that the intent of its framers was not that it should so operate.' (*People* v. *Earl*, 19 Cal. App. 69, 72 [124 Pac. 887].)''

To the same effect is the case of *Mitchell* v. *Superior Court*, 76 Cal. App. 734 [245 Pac. 1109]. In this case the court quotes approvingly the language of Judge McSherry, of the Supreme Court of Maryland, wherein he calls attention to the fact that punctuation is the work of the draftsman or printer, and is not necessarily the work of the legislature.

That punctuation is to be disregarded when it leads to absurdities and the intent of the legislature is shown by the various acts. We may also refer to 51 Corpus Juris, page 91, including the text and also the numerous citations referred to in the notes.

In 25 Ruling Case Law, page 965, the text reads: ''It seems to be well settled that punctuation is a fallible standard of the meaning of a statute, and the last resort is an aid in its interpretation, though it may be resorted to as such when the meaning of the statute is doubtful. In the interpretation of statutes the true meaning of the lawmaker must be ascertained from the whole purview, and when that is manifest from a judicial inspection, the court will not permit punctuation to control but will disregard the punctuation of a statute or repunctuate, if need be, to what otherwise appears to be its purpose and true meaning.''

The respondent further calls our attention to the use of the words ''wilfully'' and ''unlawfully''. Without anything further, these words are not sufficient to clothe an act with a criminal mantle. ''Wilfully'' signifies only an intention, and ''unlawfully'', without any further designation is, as set forth in 66 C. J., page 34: ''As used in pleading, 'unlawful' assigns no specific legal character to the acts alleged.'' That it may be unlawful to enter the premises of another may constitute only a civil offense and does not necessarily clothe the act with a criminal character.

That the primary rule of construction is to ascertain the intent of the legislature, to which other rules must give way, appears also in the case of *In re Sekuguchi*, 123 Cal. App. 537 [11 Pac. (2d) 655]. The insertion of the words "cultivated lands" became necessary by reason of the fact that a large percentage of the lands so used are no longer enclosed. The bar against intrusion for the purposes mentioned in the subsection thus became complete.

In the case of *Messick* v. *Superior Court*, 57 Cal. App. 340 [207 Pac. 58], the specific acts constituting the offense performed after the entry are fully set forth, and nothing therein, as we read the case, detracts from the rules of interpretation which we have followed. Nor is there anything in the case of *In re Ahart*, 172 Cal. 762 [159 Pac. 160], limiting anything which we have set forth herein. The same may be said in relation to the case of *In re Roberts*, 157 Cal. 472 [108 Pac. 315].

Our attention is also directed by the respondent to subdivision "G" of section 602, *supra*. That subdivision, however, is not under consideration herein, is not subject to the rules of construction which we are applying, and it may be further added that the validity of that subdivision will be determined only when it comes squarely before the court for consideration. Nor are we dealing with, or expressing any opinion herein as to the right of an owner to exclude any and all persons from his premises. We are dealing strictly with the interpretation of subdivision "J" of section 602, *supra*, and setting forth the intent of the legislature as ascertained from the history of the subdivision and the evils sought to be prohibited.

From what we have said the conclusion is unescapable that the complaint, upon which the warrant of arrest under which Ben Davis and Julia Leslie are restrained of their liberty, does not state a cause of action, and they are hereby discharged from the custody and restraint of Donald A. Cox, sheriff of the county of Sacramento.

Pullen, P. J., and Thompson, J., concurred.