[Civ. No. 2036. Fourth Appellate District.—May 19, 1938.]

HELPING HAND HOME FOR CHILDREN (a Nonprofit Corporation), Appellant, v. COUNTY OF SAN DIEGO et al., Respondents.

Ferdinand T. Fletcher and James G. Pfanstiel for Appellant.

Thomas Whelan, District Attorney, and William A. Glen, Chief Deputy District Attorney, for Respondents.

HAINES, J., *pro tem.*—Appellant, Helping Hand Home for Children, hereinafter referred to as the "Home", is a nonprofit charitable corporation organized under the laws of California and owns certain real property within the city of San Diego, on which are certain buildings wherein it conducts its activities, which consist generally of sheltering and caring for needy children. Its properties were assessed for the purposes of taxation and taxes levied thereon by the authorities of the County of San Diego for each of the fiscal years 1932–33, 1933–34, 1934–35 and 1935–36. Appellant instituted the present proceeding by petition for a writ of mandate against the County of San Diego and the Board of Supervisors and District Attorney thereof, wherein it is claimed that each and all of these assessments and tax levies are illegal "for the reason that all said buildings and the whole of said real property, during each and every fiscal year, were required and used by petitioner for its occupation as an institution sheltering more than 20 orphan children receiving state aid, and because of ·said use and occupation is free from taxation". It is further alleged that the purported taxes so levied have not been paid and are, according to the records, delinquent, and that the records of such purported delinquencies constitute and are clouds upon the petitioner's title; that application to the Board of Supervisors for their removal has been made and denied. It is further alleged that appellant Home "has performed each and every

act and thing by it to be performed to render said property exempt from taxation''. The court was asked to direct the Board to cause the record of said tax assessments and levies to be canceled and to direct the District Attorney to assent to such cancellation.

The answer, as amended, admitted most of the matters alleged in the petition but denied appellant's status as an institution sheltering more than 20 orphan and half-orphan children receiving state aid, and denied the performance by appellant of the conditions precedent to its right to exemption from taxation. The case having been tried, the court found that appellant was a nonprofit charitable corporation, as alleged, owning the property described. in its petition, and that assessments and levies of taxes had been made against the same as claimed, and remained unpaid; that during each of the fiscal years 1934–35 and 1935–36 appellant Home ''actually sheltered and had in its care and custody in said buildings and upon said real property more than 20 orphan and half-orphan children for whom petitioner received state aid'', but that during the respective fiscal years 1932–33 and 1933–34, though in the one year it sheltered and cared for 33, and in the other for 41 orphan and half-orphan children, it had received state aid for only 15 of them in the former year and for only 17 in the latter. The court's conclusion of law was that appellant's property should have been given exemption from taxation for the fiscal years 1934–35 and 1935–36, but not for either of the fiscal years 1932–33 or 1933–34, and judgment was given accordingly. From this judgment appellant Home appeals.

The sole question before us for consideration is the proper construction of that part of section 1½a of article XIII of the state Constitution which, in so far as we need quote it, reads as follows:

''*Exempting Orphanages from Taxation.* All buildings, and so much of the real property connected therewith as may be required for the occupation of institutions sheltering more than twenty orphan or half-orphan children receiving state aid shall be free from taxation; . . . ''

The present inquiry is stated in appellant's opening brief to be: ''Does the phrase 'receiving state aid' refer to and limit the noun 'institutions' or the noun 'children'?'' It is manifest that if the expression ''receiving state aid'' applies

to the noun "institutions" then for the two fiscal years 1932–33 and 1933–34 affected by the appeal, appellant Home was entitled to exemption from taxation because each of said years it received some aid for some children, whereas, if the said expression "receiving state aid", as used in the constitutional provision, refers to and limits the noun "children" then, since the state aid was not, during either of said two years given to appellant Home for as many as 20 children, it is not for either year exempt from taxation.

If the ordinary rules of grammar were followed, the phrase "receiving state aid" would be treated as applying to the nearest antecedent noun, which is "children", not "institutions". Obviously, therefore, it is the burden of appellant Home to show why that construction should not be adopted. Starting out with the propositions that the cardinal rule in construing a constitutional or statutory provision is to ascertain its intent (*In re Davis,* 18 Cal. App. (2d) 291 [63 Pac. (2d) 853]; *People* v. *Strickler,* 25 Cal. App. 60 [142 Pac. 1121]); that the interpretation adopted must be reasonable (Civ. Code, sec. 3542); that a constitutional provision or a statute should be so construed as to give a sensible and intelligible meaning to every part of it so as to avoid absurd and unjust consequences (*Robbiano* v. *Bovet,* 218 Cal. 589 [24 Pac. (2d) 466]; *Madary* v. *City of Fresno,* 20 Cal. App. 91, 97 [128 Pac. 340]; *Matter of Zany,* 20 Cal. App. 360, 368 [129 Pac. 295]; *In re Davis, supra*); and that a statute should be so interpreted as to make it valid and effective (*In re Davis, supra*); appellant's counsel urge: (a) that the arguments presented under the provisions of section 1195 of the Political Code and submitted with their sample ballots to the electors when section 1½a of article XIII of the Constitution was submitted in 1920 for adoption assume, and, in effect, say, that the reference is to institutions that are, as such, receiving state aid, and that resort may properly be had to these arguments in determining the proper construction of the amendment as adopted; (b) that under article IV, section 22 of the state Constitution and sections 2283 to 2289, both inclusive, of the Political Code, as in effect at the time of the assessments and tax levies here involved (in 1937 carried in a revised form into the Welfare and Institutions Code), orphan aid was given not to the child but to the institution and, therefore, that in the said constitutional

provision the words ''receiving state aid'' necessarily refer to the institution, not children; and (c) that the construction for which respondents contend would lead to results to such an extent absurd and unjust that the electors cannot reasonably be believed to have contemplated them.

On behalf of respondents, on the other hand, it is urged that the said section 1½a of article XIII of the Constitution is free from ambiguity and therefore requires no construction; that it follows that the courts may not go outside its language to ascertain its meaning and, finally, that exemption from taxation is the exception and not the rule and, therefore, that the exemption provision under discussion must be strictly construed.

We are constrained to the view that respondents' contention must be upheld. While it is true that the effort of the courts, alike in construing statutes and in construing constitutional provisions, must be directed to ascertaining their true intent, yet such intent is ordinarily to be ascertained from their language. Sometimes, indeed, their language may be so fantastic in its necessary consequences, if literally applied, that it is impossible to give to it any rational meaning, and that a mere reading of it is enough to convince any rational mind that what it actually stated could not have been meant; and on the other hand, language used is sometimes so ambiguous that, without extrinsic aid, it is impossible to tell which of two or more meanings, equally admissible on its face, ought to be assigned to it. When confronted with the former of these situations the courts have gone to considerable lengths to reconstruct the language used in order that the apparent intent of the provision or enactment should not fail for want of accurate expression (*People* v. *Strickler, supra,* p. 66; *In re Davis, supra*); and when confronted with the latter situation, particularly in the case of constitutional provisions, the courts may properly resort to the record of debates in legislative bodies or constitutional conventions or to the arguments made to the electors in the submission of propositions for adoption, in order to ascertain which of the alternatives and admissible meanings should be ascribed to the language used. (*Story* v. *Richardson,* 186 Cal. 162 [198 Pac. 1057, 18 A. L. R. 750]; *Yosemite Lumber Co.* v. *Industrial Acc. Com.,* 187 Cal. 774 [204 Pac. 226, 20 A.L. R. 994]; *Pasadena University* v. *Los Angeles County,* 190 Cal. 786

[214 Pac. 868].) It is also the law, as laid down, for example, in *Robbiano* v. *Bovet, supra,* p. 596, quoting from *People* v. *Ventura Oil Ref. Co.,* 204 Cal. 286, 292 [268 Pac. 347, 283 Pac. 60], that:

"When a statute is fairly susceptible of two constructions, one leading inevitably to mischief or absurdity and the other consisting of sound sense and wise policy, the former should be rejected and the latter adopted."

In *People* v. *Ventura Oil Ref. Co., supra,* indeed, the court went so far (p. 290) as to say that "where the interpretation claimed leads to injustice, oppression or to absurd consequences, the general terms used in the statute will be limited in their scope so as to avoid such a result" (citing *Ex parte Lorenzen,* 128 Cal. 431, 438, 439 [61 Pac. 68, 79 Am. St. Rep. 47, 50 L. R. A. 55], and *People* v. *Earl,* 19 Cal. App. 69, 71, 72 [124 Pac. 887].) ▮ We do not see anything, however, in the instant case that could justify us in the application of any of these principles. Nothing is more firmly settled than in ordinary circumstances, where it involves no ambiguity or absurdity, a statutory or constitutional provision requires no interpretation. (*Bourland* v. *Hildreth,* 26 Cal. 161, 180; *City of Eureka* v. *Diaz,* 89 Cal. 467, 469 [26 Pac. 961]; *Davis* v. *Hart,* 123 Cal. 384, 387 [55 Pac. 1060]; *Seaboard Acceptance Corp.* v. *Shay,* 214 Cal. 361 [5 Pac. (2d) 882]; *Earl Ranch, Ltd.,* v. *Industrial Acc. Com.,* 4 Cal. (2d) 767, 769 [53 Pac. (2d) 154]; *In re Weisberg,* 215 Cal. 624, 632 [12 Pac. (2d) 446]; *Rumetsch* v. *Davie,* 47 Cal. App. 512, 515 [190 Pac. 1075]; *Dodge* v. *Mitchell,* 94 Cal. App. 779, 781 [272 Pac. 352].) Resort to debates in constitutional conventions or to arguments made to voters is to be had only with caution and not at all where the meaning of the provision involved is clear. (*People* v. *McCreery,* 34 Cal. 432, 453; *Matter of Smith,* 152 Cal. 566 [93 Pac. 191]; *Fay* v. *District Court of Appeal,* 200 Cal. 522, 536 [254 Pac. 896]; *McGuire* v. *Wentworth,* 120 Cal. App. 340, 344 [7 Pac. (2d) 729].)

▮ We find no ambiguity in the constitutional provision here involved. The words "receiving state aid" in the position in which they appear, clearly apply to and modify the noun "children". The suggestion that to so apply them would be out of harmony with the method of giving state aid actually in force, contemplated in section 22 of article

IV of the Constitution and made effectual by said former section 2283 of the Political Code is unsound. It is true enough that the appropriation of moneys was made to the institution, but so far as section 22 of article IV of the Constitution is concerned, while it authorizes the granting of state aid to institutions conducted for the support and maintenance of minor orphans, half-orphans, etc., it goes on to require that the aid "be proportioned to the number of inmates of such respective institutions", which is tantamount to saying that a given proportion of the aid shall be given *for* or, in effect, *to* each inmate. As respects the Political Code, under the terms of the former section 2283 the aid was given to the institution "for each such orphan, half-orphan", etc., "supported and maintained in such institution or by such county, city and county, city or town". While the aid was given to the institution, it was for the support of the inmate, which is for practical purposes merely a method of aiding the inmate. The reference, then, in section 1½a of article XIII of the Constitution to "children receiving state aid" is to all intents and purposes accurate. Even, however, if this constitutional provision did not, though in fact it does, refer with substantial accuracy to the process by which state aid is rendered for the support of orphans, its meaning could hardly be affected by the provisions from time to time made in that behalf by mere statutes. Section 2283 of the Political Code was originally enacted in 1907, though it was several times amended and finally superseded in 1937, as already noted, by the cognate provisions of the Welfare and Institutions Code. Section 1½a of article XIII of the Constitution was adopted, as hereinbefore noted, in 1920.

We may add that there does not seem to us to be any intrinsic absurdity in requiring, as a requisite to the exemption of what may be valuable properties from taxation, that the institution owning them be one with which the state is sufficiently concerned to be aiding a substantial number of its inmates. Otherwise, the mere fact that such institution might be in receipt of an insignificant amount of aid for the support of a single child might exempt it from paying taxes on many thousands of dollars' worth of property.

Finally, even though we thought some ambiguity to exist in the constitutional language discussed, as we in fact do not, we would still be required to follow the stricter con-

struction since provisions for exemption from taxation must be strictly construed. (State Const., art. XIII, sec. 1; *State Land Settlement Board* v. *Henderson*, 197 Cal. 470, 481 [241 Pac. 560]; *Cypress Lawn Cemetery Assn.* v. *San Francisco*, 211 Cal. 387, 390 [295 Pac. 813].)

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.