TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 94-603 |
| of | : | |
| | : | August 3, 1994 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE JERRY R. HERMAN, DISTRICT ATTORNEY, MARIN COUNTY, has requested an opinion on the following question:

May a business distribute its advertising flyers in residential neighborhoods by placing them on the driveways, in the yards, or at the front doors of homes without the express consent of the residents?

CONCLUSION

A business may distribute its advertising flyers in residential neighborhoods by placing them on the driveways, in the yards, or at the front doors of homes without the express consent of the residents.

ANALYSIS

It is a common practice in residential neighborhoods throughout the state for business advertising flyers describing services or products of use to homeowners to be placed on driveways or in yards or hung on front doorknobs of homes.[1] Real estate agents, landscape contractors, and a host of

_____

[1] Under federal law, such material may not be placed in mailboxes by the advertiser. (18 U.S.C. § 1725; *U.S. Postal Service* v. *Greenburgh Civic Assns.* (1981) 453 U.S. 114.)

94-603

other businesses distribute advertising material in such manner from time to time. The question presented for resolution is whether this common practice is prohibited by law.[2] We conclude that it is not.

The law in question is Penal Code section 556.1.[3] Section 556.1 provides:

"It is a misdemeanor for any person to place or maintain or cause to be placed or maintained upon any property in which he has no estate or right of possession any sign, picture, transparency, advertisement, or mechanical device which is used for the purpose of advertising, or which advertises or brings to notice any person, article of merchandise, business or profession, or anything that is to be or has been sold, bartered, or given away, without the consent of the owner, lessee, or person in lawful possession of such property before such sign, picture, transparency, advertisement, or mechanical device is placed upon the property."

Section 556.1 is one of four statutes enacted in 1953 (Stats. 1953, ch. 32, § 10) to deal with the unlawful placement of signs on public and private property. The basic statutory language dates back to 1911. (Stats. 1911, ch. 487; see 70 Ops.Cal.Atty.Gen. 296 (1987).) Section 556 states with respect to public property:

"It is a misdemeanor for any person to place or maintain, or cause to be placed or maintained without lawful permission upon any property of the State, or of a city or of a county, any sign, picture, transparency, advertisement, or mechanical device which is used for the purpose of advertising or which advertises or brings to notice any person, article of merchandise, business or profession, or anything that is to be or has been sold, bartered, or given away."[4]

Section 556.2 provides exceptions to the two statutes:

"Sections 556 and 556.1 do not prevent the posting of any notice required by law or order of any court, to be posted, nor the posting or placing of any notice, particularly pertaining to the grounds or premises upon which the notice is so posted or placed, nor the posting or placing of any notice, sign, or device used exclusively for giving public notice of the name, direction or condition of any highway, street, lane, road or alley."

---

[2]The scope of this opinion is limited to an analysis of the state statutory provisions that arguably may prohibit the practice in question. We note that in *City of Cincinnati* v. *Discovery Network* (1993) 507 U.S. __ [123 L.Ed.2d 99; 113 S.Ct. 1505], the United States Supreme Court recently reviewed the authority of state and local governments to regulate the distribution of commercial advertising material.

[3]All section references are to the Penal Code unless otherwise specified.

[4]In 70 Ops.Cal.Atty.Gen. 296, *supra*, we concluded that section 556 applies only to commercial advertising and not to the campaign signs of candidates for public office.

The fourth statute, section 556.3, states:

"Any sign, picture, transparency, advertisement, or mechanical device placed on any property contrary to the provisions of Sections 556 and 556.1, is a public nuisance."

In analyzing the provisions of section 556.1, we may rely upon several principles of statutory construction. "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.] But `[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.'" (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899.) "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]" (*Dyna-Med, Inc.* v. *Fair Employment and Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387.) "`Penal statutes will not be given application beyond their plain intent. Such acts include only those offenses coming clearly within the import of the language.'" (*People* v. *Carskaddon* (1957) 49 Cal.2d 423, 427.)

Initially, we observe that the modes of advertising which are covered by section 556.1 are not described in terms of flyers, leaflets, handbills, circulars, doorhangers, or the like. Instead they are cast in terms of signs, pictures, transparencies, or mechanical devices -- items which are ostensibly designed to attract the attention of passers-by rather than be picked up and read by an individual property owner. We believe that the word "advertisement" as used in this context does not mean all advertisements irrespective of their intended audience, but rather only those directed at the public from the property location. This conclusion rests on the rule of statutory construction known as *noscitur a sociis*. "*Noscitur a sociis* (`it is known by its associates') is the principle that `"`the meaning of a word may be enlarged or restrained by reference to the object of the whole clause in which it is used.'"' [Citations.]" (*Texas Commerce Bank* v. *Garamendi* (1992) 11 Cal.App.4th 460, 471, fn. 3.)

Another indication that section 556.1 is not intended to apply to leaflet-type advertising directed to property owners may be found in the Outdoor Advertising Act (Bus. & Prof. Code, §§ 5200-5486; "Act") which regulates outdoor advertising displays within view of public highways. The Act makes it "unlawful for any person to place or cause to be placed, or to maintain or cause to be maintained any advertising display without the lawful permission of the owner or lessee of the property upon which the advertising display is located" (Bus. & Prof. Code, § 5460), declares all advertising displays which are placed in violation of the Act to be public nuisances (Bus. & Prof. Code, § 5461), and provides that a violation of the Act is punishable as a misdemeanor (Bus. & Prof. Code, § 5464). The Act defines "to place" as follows:

"The verb, `to place' and any of its variants, as applied to advertising displays, includes the maintaining and the erecting, constructing, posting, painting, printing, tacking, nailing, gluing, sticking, carving or otherwise fastening, affixing or making visible any advertising display on or to the ground or any tree, bush, rock, fence, post, wall, building, structure or thing. . . ." (Bus. & Prof. Code, § 5225.)

We believe that the Act's definition of the term "to place" supports the inference that section 556.1's prohibition is directed at advertisements that are intentionally positioned in such a way as to be visible to the general public rather than displayed to the property owner. "The interpretation of an ambiguous statutory phrase may be aided by reference to other statutes which apply to similar or analogous subjects." (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1008-1009.)

Moreover, if the provisions of section 556.1 were meant to include advertising directed to property owners, the consent requirement of the statute would have little or no meaning. Ringing a doorbell and obtaining express consent would normally result in handing the advertisement to the homeowner, not dropping it on the door step or driveway as the advertiser is leaving. On the other hand, the consent requirement is understandable when applied to an advertiser who wishes to use the owner's property for the purpose of advertising to the general public.[5]

A final indicator of the legislative intent in enacting section 556.1 is that any sign, picture, transparency, advertisement, or mechanical device placed on property contrary to the provisions of the statute is deemed a "public nuisance." (§ 556.3.) A public nuisance is defined by section 370 as follows:

"Anything which is injurious to health, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property by an entire community or neighborhood, or by any considerable number of persons, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin or any public park, square, street, or highway, is a public nuisance."

In 43 Ops.Cal.Atty.Gen. 190 (1964), we concluded that placing business advertising flyers in the yards of homeowners was not a public nuisance as defined in section 370. "The presence of advertising fliers on the porches or yards of private property would not appear to be sufficient, in itself, to constitute a public nuisance." (*Id*., at p. 192.)

---

[5]A similar situation involving owner consent was at issue in *In re Davis* (1936) 18 Cal.App.2d 291. The prosecution urged that a misdemeanor trespass statute could be violated by merely entering "any lands under cultivation or enclosed by fence" without the written permission of the owner. The court described the consequences of that construction as follows:

"It would appear that if the construction of the subdivision contended for by the respondent is correct, then and in that case a farm-hand seeking employment from the owner of the premises involved, could not enter thereon without being guilty of a misdemeanor, unless he first obtained permission to make such entry and seek employment; that an automobile salesman or anyone desiring to contact the owner for the purpose of negotiating a sale, or to gain information as to directions, would likewise be guilty of a misdemeanor if he entered any premises enclosed by a fence." (*Id*., at p. 293.)

The court rejected the contention, agreeing with the defendant's argument "that such a construction leads to an absurdity and could not have been within the contemplation of the legislature, and that the subdivision must be read in the light of the acts [hunting, shooting, killing, or destroying any animal or bird on such lands] sought to be prohibited." (*Ibid*.)

In our 1964 opinion, we also concluded that placing business advertising flyers in the yards of homeowners would not violate section 374b ["It shall be unlawful to place . . . papers . . . on any private property without the consent of the owner . . . ."].  (43 Ops.Cal.Atty.Gen., *supra*, 191-192.)  Section 374b has since been replaced by section 374.3 which uses the term "waste matter" for the various items, including paper, that were enumerated in section 374b.  "It is unlawful to dump . . . any waste matter . . . upon any private property without the consent of the owner . . . ."  (§ 374.3, subd. (a).)  As we concluded in our prior opinion:  "The word `papers' . . . reasonably interpreted in light of the context in which it appears, would not include weekly shoppers or other advertising fliers."  (43 Ops.Cal.Atty.Gen., *supra*, 192.)   The same would be true of the term "waste matter" now contained in section 374.3.

We know of no other statute that would prohibit a business from distributing advertising flyers in residential neighborhoods by placing them on the driveways, in the yards, or at the front doors of homes without the express consent of the residents.  Accordingly, we conclude that advertising flyers may be so distributed.

* * * * *